**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

**IN re APPLICATION XVI OF the INDEPENDENT ADMINISTRATOR.**

**No. 88 CIV. 4486 (DNE).**

United States District Court, S.D. New York.

Dec. 28, 1990.

---

Charles M. Carberry, Investigations Officer of the International Broth. of Teamsters, New York City (Robert W. Gaffey, of counsel), for defendant International Broth. of Teamsters.

Otto G. Obermaier, U.S. Atty. S.D. New York (Peter C. Sprung, Asst. U.S. Atty., of counsel), for U.S.

Stillman, Friedman & Shaw, New York City, Edward M. Shaw, (Arnold & Kadjan, Chicago, Ill., John J. Toomey, of counsel), for Dominic Senese.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This memorandum emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, an Investigations Officer to bring charges against corrupt IBT members, and an Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Con-

sent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

## I. Background

Application XVI of the Independent Administrator submits for this Court's review his November 29, 1990 supplemental opinion (annexed as exhibit 1) to his opinion of July 12, 1990. The July 12, 1990 opinion of the Independent Administrator decided disciplinary charges against Dominic Senese, Joseph Talerico, and James Cozzo, and was submitted for this Court's review by way of Application XII. In the July 12, 1990 opinion, the Independent Administrator found that the Investigations Officer had met his burden and demonstrated just cause that the charges against Senese, Talerico and Cozzo had been proved. Application XII was affirmed in all respects by the August 27, 1990 Opinion and Order of this Court, 745 F.Supp. 908 (S.D.N.Y.1990), except this Court remanded the question of whether the penalties of lifetime suspension from the IBT imposed on Senese, Talerico, and Cozzo included the termination of their health and welfare benefits. The facts and circumstances surrounding the charges against Senese, Talerico, and Cozzo are fully set out in the August 27, 1990 Opinion, *supra*, familiarity with which is assumed.

The supplemental opinion only considered the termination of Senese's health and welfare benefits: Talerico and Cozzo had no known health and welfare benefits. With respect to Senese, the Independent Administrator determined that (1) the Consent Decree is no bar to his terminating health and welfare benefits; (2) he lacks jurisdiction over Senese's three health and welfare plans; (3) that while he has the power to prevent Senese from receiving any payments from his health and welfare

plans he would not order such; and (4) he would bar Senese's former local from making post-expulsion payments into the plans for Senese's benefit. Further, the Independent Administrator invalidated certain severance disbursements made by Local 703 to Senese, specifically (i) a sixty (60) week severance allowance; and (ii) transference to Senese of full title of his IBT-owned automobile.

In his objections to the supplemental opinion, Senese argues (i) that the Independent Administrator is barred from terminating health and welfare benefits by the ERISA state-law preemption; (ii) the Consent Decree prevents the termination of these health and welfare benefits; and (iii) this Court should review this penalty determination Independent Administrator *de novo*. The Government objects solely to the decision of the Independent Administrator not to prohibit Senese from receiving any payments from his health and welfare plans. The Investigations Officer concurs with the supplemental opinion in all respects.

The supplemental opinion of the Independent Administrator is affirmed in all respects.

## II. Discussion

### A. The Consent Decree Permits the Termination of Health and Welfare Benefits

Senese argues that the determination of the Independent Administrator that ¶¶ M.18 and O.20 of the Consent Decree do not prevent him from imposing a penalty involving health and welfare benefits was arbitrary and capricious. This contention is twofold. First, he argues that ¶ M.18—a catchall reservation of rights provision—specifically prevents any termination of health and welfare benefits.[1] Second, Se-

---

1. Paragraph M.18 of the Consent Decree provides as follows:

"Except as provided by the terms of this order [the Consent Decree] nothing else herein shall be construed or interpreted as affecting or modifying: (a) the IBT Constitution; (b) the Bylaws and Constitution of any IBT affiliates; (c) the conduct and operation of the affairs of the IBT

or any IBT-affiliated entity or any employee benefit fund as defined in ERISA or trust fund as defined by Section 302(c) of the Labor Management Relations Act, as amended; (d) the receipt of any compensation or benefits lawfully due or vested to any officer, employee, member or employee of the IBT or any of its affiliates and affiliated benefit fund; or (e) the term of

nese argues that ¶ O.20 limits the penalties that may be imposed by the Independent Administrator.[2] Senese's argument is without merit and must be dismissed.

■ These arguments to this Court are essentially the same as those rejected by the Independent Administrator. With respect to ¶ M.18, the Independent Administrator correctly noted that the only rational interpretation was that the specific disciplinary authority of the Independent Administrator to impose punishment listed at ¶ F.12.(C) controlled the general reservations of rights provision of ¶ M.18. For example, under Senese's proposed interpretation of these provisions, ¶ M.18(e) would preclude the Independent Administrator from suspending or debarring a sanctioned IBT officer. Such reasoning is illogical and directly contravenes the explicit and implicit terms of the Consent Decree.

■ Senese's proposed reading of ¶ O.20 is similarly mistaken. Paragraph O.20 specifically applies only to those individuals who were defendants in the underlying RICO action. This provision has no relevance to penalties imposed against Senese.

As a result, Senese has not demonstrated that this determination of the Independent Administrator was arbitrary or capricious.

### B. ERISA State Law Pre–Emption

Senese argues that the Independent Administrator has no power to interfere with any aspect of Senese's health and welfare plans because ERISA pre-empts state law. Specifically, Senese contends that the Independent Administrator's disciplinary power derives from the Consent Decree, which is a contract. As a result, Senese argues that an ERISA plan may not in any way be impaired by authority deriving from state law contractual terms. This argument is without reason.

■ Unlike ERISA pension benefits, ERISA health and welfare benefits are subject to alienage. *Guidry v. Sheet Metal Workers National Pension Fund,* —— U.S. ——, 110 S.Ct. 680, 685, 107 L.Ed.2d 782 (1990); *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 836, 108 S.Ct. 2182, 2188, 100 L.Ed.2d 836 (1988). As a result, the question of ERISA pre-emption is inapplicable to this issue. Moreover, Senese's attempt to characterize the Consent Decree—entered under the federal RICO statute—as analogous to a state law contract is absurd. As a result, Senese has not demonstrated that this determination of the Independent Administrator was arbitrary or capricious.

### C. Standard of Review of the Independent Administrator

■ Senese argues that this Court review these determinations of the Independent Administrator *de novo* because this matter involves questions of ERISA and an interpretation of the Consent Decree. This contention is meaningless and calls upon the Court to ignore the numerous determinations in this case. *See United States v. International Brotherhood of Teamsters,* 905 F.2d 610, 616 (2d Cir.1990, *aff'g* March 13, 1990 Opinion and Order, 743 F.Supp. 155, 159–60 (S.D.N.Y.1990); November 2, 1989 Memorandum and Order, 725 F.Supp. 162, 169 (S.D.N.Y.1989); January 17, 1990 Memorandum and Order, 728 F.Supp. 1032, 1048–57 (S.D.N.Y.1990), *aff'd* 907 F.2d 277 (2d Cir.1990); *Local 27 v. Carberry, et al.,* July 20, 1990 at 3–4, 1990 WL 108348 (S.D.N.Y.1990); *Joint Council 73 et al. v. Carberry et al.,* 741 F.Supp. 491, 493 (S.D.N.Y. 1990); August 27, 1990 Opinion and Order, 745 F.Supp. 908, 911; September 18, 1990 Opinion and Order, 745 F.Supp. 189, 191–92.

Paragraph F.12.(C) of the Consent Decree mandates that the Independent Ad-

---

office of any elected or appointed IBT officer or any of the officer of any IBT-affiliated entities.

**2.** Paragraph O.20 states as follows:
"Nothing herein shall preclude the United States of America or the United States Department of Labor from taking any appropriate action in regard to any of the union defendants in re-

liance on federal laws, including an action or motion to require disgorgement of pension, severance or any any other retirement benefits of any individual union officer defendant on whom discipline is imposed pursuant to paragraph 12 above."

ministrator must decide disciplinary hearings using a "just cause" standard. Consent Decree at 9. Paragraph K.16 provides that this Court shall review actions of the Independent Administrator using the "same standard of review applicable to review of final federal agency action under the Administrative Procedure Act." Consent Decree at 25. This Court may only overturn the findings of the Independent Administrator when it finds that they are, on the basis of all the evidence, "arbitrary or capricious." This Court and the Court of Appeals have interpreted ¶ K.16 to mean that decisions of the Independent Administrator "are entitled to great deference." 905 F.2d at 616 (2d Cir.1990) *aff'g* March 13, 1990 Opinion and Order, 743 F.Supp. 155 (S.D.N.Y.1990).

Senese's argument is without merit and must be dismissed.

### D. Further Sanctions

■ The Government challenges the determination of the Independent Administrator not to prevent Senese from receiving payments that may be made to him from his health and welfare plans because of contributions already made into those plans. In his supplemental opinion, the Independent Administrator deemed it "impractical, and perhaps unworkable, to prohibit Senese from drawing any payment from these plans ..." The Government disagrees.

The Independent Administrator determined not to prevent Senese from receiving these payments. Essentially because these health and welfare plans are so intricate and complex, the Independent Administrator decided not to prevent Senese from receiving such benefits because it would create problems foreseeable and unforeseeable.

Accordingly, this determination was neither arbitrary nor capricious.

### III. Conclusion

IT IS HEREBY ORDERED that the supplemental opinion of the Independent Administrator, annexed as exhibit 1, is affirmed in all respects. These penalties shall take effect with the entry of this order.

So Ordered.

### APPENDIX

Investigations Officer, Plaintiff,

—against—

Dominic Senese, Joseph Talerico, and James Cozzo, Defendants.

### SUPPLEMENTAL OPINION OF THE INDEPENDENT ADMINISTRATOR

### I. BACKGROUND

In my Opinion of July 12, 1990, in this matter, I determined that Dominic Senese ("Senese") Joseph Talerico ("Talerico") and James Cozzo ("Cozzo") were to permanently remove themselves from all of their IBT-affiliated union positions and draw no money or compensation therefrom, or from any other IBT-affiliated source. Opinion of the Independent Administrator, July 12, 1990, at p. 42. *See also* Application XII at pp. 1–2. After receiving correspondence from the parties concerning application of this sanction to pension, health and welfare benefits, I determined that the Supreme Court's ruling in *Guidry v. Sheet Metal Workers National Pension Fund,* [——U.S. ——], 110 S.Ct. 680 [107 L.Ed.2d 782] (1990), precluded me from ordering the cessation of Senese's and Talerico's pension, health and welfare benefits. *See* my letter of July 25, 1990 to Messrs. Calihan and Carberry. However, upon further consideration, I determined that the proven charges against Senese and Talerico not only required their removal from the union; it warranted the termination of any and all benefits. *See* my letter to Hon. David N. Edelstein, United States District Judge for the Southern District of New York, August 1, 1990. I also concluded that, while the Supreme Court's ruling in *Guidry* precludes the termination of Senese's and Talerico's pension benefits, it does not preclude the termination of health and welfare benefits. However, because of the possible bearing, paragraphs M.18 and O.20 of the

Consent Order have on the issue, I referred this question to Judge Edelstein. *Id.*

In his opinion dated August 27, 1990, Judge Edelstein remanded to me for decision the question of the propriety of termination of health and welfare benefits as part of the penalties imposed in this matter. Accordingly, I asked the parties as well as the office of the United States Attorney for the Southern District of New York ("Government") and the International Brotherhood of Teamsters ("IBT") to brief this issue. *See* my letter of August 29, 1990.

By my letter of September 6, 1990, I also requested that I be provided with copies of all benefit plans and any other payment arrangements that are at issue. Senese submitted the following documents: (i) copies of minutes of the meetings of the Local 703 Executive Board reflecting certain policies of Local 703 [1]; (ii) Produce Drivers and Florists Union Local No. 703, Audited Financial Statements for the Years Ended December 31, 1988 and 1989; (iii) a document entitled "Chicago Area I.B.T. Severance and Retirement Trust Fund Summary Plan Description;" (iv) a document entitled "Chicago Area I.B. of T. Severance and Retirement Plan;" (v) a document entitled "Restated Agreement and Declaration of Trust Creating the Chicago Area I.B. of T. Health and Welfare Trust Fund;" (vi) a document entitled "Restated Agreement and Declaration of Trust Creating the Chicago Area I.B. of T. Pension Trust Fund;

(vii) a document entitled "Chicago Area of I.B. of T. Pension Trust Fund;" (viii) a document entitled "The Teamster Affiliates—A Defined Benefit Pension Plan for the Employees of the Affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America;" (ix) a document entitled "Central States, Southeast and Southwest Areas Pension Fund, Announcing Important New Pension Benefits;" and (x) a document entitled "Central States, Southeast and Southwest Area Pension Fund, Summary of Pension benefits."

I also received a letter dated September 11, 1990, from Edward J. Calihan Jr., counsel for Talerico, advising me that Talerico has no continuing health and welfare benefit coverage. Mr. Calihan further informed me that no further health and welfare coverage will be undertaken on Talerico's behalf. I interpret this as meaning that such coverage will not be sought or undertaken.

Cozzo failed to appear in the underlying disciplinary proceedings, and has submitted nothing on this issue.

## II. DISCUSSION

### A. *Paragraphs M.18 and O.20 Of The Consent Order.*

The Government and the Investigations Officer argue that nothing in the Consent Order prohibits the Independent Administrator from terminating payments unprotected by statute or federal regulation to disciplined IBT members or officers.

---

**1.** The minutes of an Executive Board Meeting of Local 703 held on May 22, 1987 provide at pp. 4–5:

> ... [t]o implement the policy approved at the membership meeting held on April 24, 1987, it is now the policy of this Local Union that any person who has served for nine (9) consecutive years, past service or future service years as an officer of this Local union, shall be eligible to receive a severance allowance equal to sixty (60) weeks of pay, paid at the weekly salary the officer is receiving when the officer ceases to be an officer of this Local Union, for any reason whatsoever.

> . . . . .

> [I]t is the policy of this Local Union that any union officer or staff representative after having been employed continuously for nine

(9) full years of employment or more, upon leaving the employment of the Union shall be given full title of the automobile then being used by that officer or staff representative....

The minutes of an Executive Board Meeting of Local 703 held on May 26, 1989 provide:

> ... This benefit was approved at the membership meeting on May 22, 1987, but through clerical error, was not recorded in the minutes. This benefit was reapproved as follows:

> After nine consecutive years of full time service with Local 703, each officer or employee who terminates employment with Local 703 shall be entitled to all health benefits from the Local 703 Health and Welfare Trust fund for the remainder of his or her life.... The cost for the health benefits shall be paid by Local 703 for that life.

Government's Memorandum in Support of Termination of Respondents' Health and Welfare Benefits ("Government's Memorandum") at pp. 8–11; Investigations Officer's Memorandum in Support of Independent Administrator's Authority to Terminate Respondents' Severance and Health and Welfare Benefits ("Investigations Officer's Memorandum") at pp. 10–11. The Government and the Investigations Officer argue that the only limitation that the Consent Order places on disciplinary actions or sanctions taken or imposed by the Independent Administrator is that they "be in compliance with applicable Federal laws and regulations." Government's Memorandum at pp. 8–9; Investigations Officer's Memorandum at p. 12, citing the Consent Order, paragraph F.12(A), at p. 10. The Government and the Investigations Officer note that, pursuant to paragraph F.12(A) of the Consent Order, the Independent Administrator has the same rights and powers as the IBT's General President and/or General Executive Board under the IBT's Constitution, and it allows the imposition of disciplinary sanctions, including "reprimands, fines, suspensions, expulsions, revocations, denial to hold any office permanently or for a fixed period, or commands to do or perform, or refrain from doing or performing, specified acts." Government's Memorandum at p. 9; Investigations Officer's Memorandum at p. 11, citing Article XIX, § 9(a) of the IBT Constitution.

Paragraph M.18 of the Consent Order provides:

*Except as provided by the terms of this order,* nothing else herein shall be construed or interpreted as affecting or modifying: (a) the IBT Constitution; (b) the Bylaws and Constitution of any IBT affiliates; (c) the conduct and operation of the affairs of the IBT or any IBT-affiliated entity or any employee benefit fund as defined in ERISA or trust fund as defined by Section 302(c) of the Labor Management Relations Act, as amended; (d) the receipt of any compensation or benefits lawfully due or vested to any officer, member or employee of the IBT or any of its affiliates and affiliated benefit fund; or (e) the term of office of any elected or appointed IBT officer or any of the officers of any IBT-affiliated entities. [Emphasis supplied].

The Government and the Investigations Officer argue that the termination of health and welfare benefits is not precluded by paragraph M.18, which bars modification of the receipt of compensation or benefits only "except as otherwise provided by the terms of the Consent Order." Government's Memorandum at pp. 8–10; Investigations Officer's Memorandum at pp. 10–12. According to the Government:

"[T]he terms of this order" include paragraph 12(A)'s authorization for the Independent Administrator to conduct disciplinary hearings on charges brought by the Investigations Officer and to make findings and impose punishment subject to Judge Edelstein's review. [Government's Memorandum at p. 8.]

The Government further argues that:

[P]aragraph [M.]18 of the Consent Order cannot be applied in the disciplinary context without doing violence to the comprehensive, internally consistent set of disciplinary provisions set forth in paragraph 12(A). In light of this conflict, the particularized provisions of paragraph 12(A) take precedence over the generalized, catch-all provision in paragraph [M.]18. [Government's Memorandum at p. 10.]

Senese and the IBT respond that the Government has the analysis reversed, and that paragraph M.18, rather than paragraph F.12(A) is the specific reservation of rights provision. IBT's Memorandum of Law in Opposition to the Termination of IBT Pension and Welfare Benefits ("IBT Memorandum") at p. 12; Senese's Memorandum in Reply to the Investigation Officer's and Government's Briefs seeking Termination of Benefits ("Senese's Reply Memorandum") at p. 14.

I agree with the arguments of the Government and the Investigations Officer that paragraph F.12(A) controls because it is a specific provision concerning disciplinary sanctions, whereas paragraph M.18 is

the more general, catch-all provision. Consideration of the interrelationship of all the provisions of the Consent Order mandates this conclusion. Were paragraph M.18 read to supersede paragraph F.12(A), as Senese and the IBT argue, the application of paragraph M.18(e) would prohibit the Independent Administrator from suspending or debarring sanctioned IBT members from the union, because such actions would affect or modify the term of office of any elected or appointed IBT officer or any of the officers of any IBT-affiliated entities. This result is unacceptable as it would do "violence to the comprehensive, internally consistent set of disciplinary provisions set forth in paragraph 12(A)." Government's Memorandum at p. 10.

Similarly, the Government and the Investigations Officer argue that paragraph O.20 of the Consent Order does not limit the scope of penalties which may be imposed by the Independent Administrator. Government's Memorandum at pp. 10–11; Investigations Officer's Memorandum at pp. 12. Paragraph O.20 states:

> Nothing herein shall preclude the United States of America or the United States Department of Labor from taking any appropriate action in regard to any of the *union defendants* in reliance on federal laws, including an action or motion to require disgorgement of pension, severance or any other retirement benefits of any *individual union officer defendant* on whom discipline is imposed pursuant to paragraph 12 above. [Emphasis supplied].

The Government and the Investigations Officer state that paragraph O.20 does not limit the powers of the Independent Administrator, but simply provides that the "United States of America or the United States Department of Labor" may, concurrently, take any of the enumerated actions against those who were defendants in the underlying Civil RICO action.[2] Government's

Memorandum at pp. 10–11; Investigations Officer's Memorandum at pp. 12–13. In contrast to other provisions of the Consent Order, including paragraph F.12(A), which concerns the Independent Administrator's power to discipline, paragraph O.20 does not refer to "any officer, member or employee of the IBT or any of its affiliates." Paragraph O.20 specifically refers to the "union defendants" in the underlying civil RICO action. As the Government and the Investigations Officer note, Senese and Talerico were not "union defendants." Government's Memorandum at p. 11; Investigations Officer's Memorandum at pp. 12–13. In this connection the plain language of the Consent Order compels me to once again agree with the interpretation advanced by the Government and the Investigations Officer that paragraph O.20. does not limit my power, but merely acknowledges that "the United States of America or the United States Department of Labor" has concurrent power as regards to "union defendants."

B. *The Issue of Jurisdiction Over The Health And Welfare Plans.*

Having determined that the Consent Order does not preclude the termination of health and welfare benefits, I must now address the issue of my jurisdiction over such plans. With regard to my assertion of jurisdiction over the various health and welfare plans, the IBT argues that:

> The IBT's numerous pension, health and welfare funds ... are legal entities completely separate and independent from the IBT and its local unions ... They have standing to sue and be sued in their own names. 29 U.S.C. § 1132(d)(1). They are formed pursuant to written trust instruments, *see* 19 U.S.C. § 1102, and are required by law to be operated under the direction of a specified number of trustees appointed by employers, balanced by an equal number of trustees appointed by the employees' representative, 29 U.S.C. § 186(c)(5).

---

**2.** The union defendants in the underlying civil RICO action are: the IBT and its General Executive Board, William J. McCarthy, Weldon Mathis, Joseph Trerotola, Joseph W. Morgan, Edward M. Lawson, Arnold Weinmeister, Donald Peters, Walter J. Shea, Harold Friedman, Jack D. Cox, Don L. West, Michael J. Riley, Theodore Cozza and Daniel Ligurotis.

The Chicago Plan, like the hundreds of other IBT pension and welfare plans, was not a party to the underlying litigation that culminated in the Consent Order, nor is it a party to the instant proceeding. Thus, the Independent Administrator has no jurisdiction over this separate legal entity. [IBT Memorandum at p. 4. (citations omitted)]

Similarly, Senese argues that:

[F]or the purposes of the I.B.T. International Constitution any entity that exists independently of the International without a charter, delegates or union officers is not an "affiliate" under the I.B.T. Constitution or Paragraph 12(A) of the Consent Order. This necessarily includes ERISA pensions and health and welfare and severance plans established under collective bargaining agreements pursuant to the Taft–Hartley Act, 29 U.S.C. 186(c) or 29 U.S.C. 1001, *et seq.*

. . . . .

As participation in the welfare, pension and severance plans is not tied to union membership under the I.B.T. International Constitution, such plans cannot be "affiliates" nor can receipt of vested benefits be considered "compensation from an I.B.T. affiliated source." . . .

The Supreme Court of the United States recognizes that Unions and Funds are separate and distinct entities . . . Under the Taft–Hartley Act, 29 U.S.C. 186(c) the Funds are jointly managed by an equal number of Trustees from management and labor. They cannot be an "IBT affiliated source" because ERISA gives them standing to sue and be sued as an entity 29 U.S.C. 1132(d)(1). [Dominic Senese Memorandum in Support of Administrator's July 25, 1990 Clarification of Penalty Imposed July 12, 1990 ("Senese Memorandum") at pp. 6–7. (citations omitted)].

Senese also states, in support of his contention that the Local 703 employee benefits, as incorporated in the Local's minutes of May 22, 1987, and May 26, 1989, are entitled to ERISA protection:

[C]ourts hold that an employer's unpublished written internal policy statements regarding benefits upon termination fall within the ERISA Welfare Plan definition. *Sly v. P.R. Mallory & Co.,* 712 F.2d 1209, 1211, 1213 N. 5. (7th Cir.1983) and *Gilbert v. Burlington Industries,* 765 F.2d 320 (2d Cir.1985), *aff'd,* 477 U.S. 901 (1986), 106 S.Ct. 3267 [91 L.Ed.2d 558]. [Senese's Memorandum at p. 9–10 (citations transcribed directly from Senese's Memorandum).]

The Government responds that "the Independent Administrator does not require 'jurisdiction' over any such benefit funds in order to direct *Senese* not to draw money from any Teamsters-related source." Government's Reply Memorandum in Support of Termination of Respondents' Health and Welfare Benefits ("Government's Reply") at p. 3 (emphasis in original).

Although I agree with the Government's position that I may direct Senese not to draw certain IBT-related compensation, the telling issue is whether I can direct the health and welfare plans themselves to cease making payments. If I do not have jurisdiction over these plans, they will, no doubt, in accordance with their own contractual obligations, continue to pay out benefits. In this regard, I agree in part with Senese and the IBT, and conclude that I do not have jurisdiction over the following plans under which Senese claims benefits as they are not solely I.B.T.-related sources (the "third-party" plans): the "Chicago Area I.B. of T. Severance and Retirement Trust Fund," the "Chicago Area I.B. of T. Health and Welfare Trust Fund," the "Chicago Area I.B. of T. Pension Trust Fund," the "Teamster Affiliates Defined Benefit Pension Plan," and the "Central States, Southeast and Southwest Areas Pension Fund." Because these plans involve non-IBT trustees and participants, I do not have jurisdiction over them, and simply can not require them to discontinue payments of benefits to Senese.[3] Given

---

**3.** If, however, it is subsequently discovered that a respondent has used IBT funds in an attempt

to amass assets in a health, welfare or severance plan in anticipation of disciplinary action, the

that I lack this power, it would be impractical, and perhaps unworkable, to prohibit Senese from drawing any payment from these plans, as the plans would doubtless continue to make payments nonetheless.

## III. THE REMEDY TO BE IMPOSED

Notwithstanding the conclusion that I lack jurisdiction over the "third-party plans," I still must address the argument of the Investigations Officer that payment of union assets to Senese, an officer who has been found to be a member of an organized crime family, would constitute a violation of the Consent Order and of federal law. Investigations Officer's Memorandum at p. 12. As stated by the Investigations Officer:

> If the executive board [of Local 703, with notice of Senese's membership in organized crime] were to nonetheless divert the substantial union assets to Senese that these severance resolutions would otherwise provide, the members of the board would be in violation of the Consent Order's injunction prohibiting association with members of La Cosa Nostra. Such payments would also violate Article XIX, section 6(b) of the IBT Constitution and the union officers' fiduciary duty to protect union assets under 29 U.S.C. section 501(c). [Investigations Officer's Memorandum at p. 10, n. 9.]

In order to protect the Union's assets and prevent Local 703's association with a member of organized crime, as properly urged by the Investigations Officer, I hereby direct Local 703 to discontinue making payments of union funds to any health, welfare or employee benefit plan on Senese's behalf. By virtue of paragraph F.12.(A), at p. 7, of the Consent Order (which grants me the same rights and powers as the IBT's General President and/or General Executive Board which relate to disciplining corrupt and dishonest officers, agents, employees or members of the IBT or any of its affiliated entities), I have the necessary jurisdiction over Local 703 and other IBT-affiliated entities to properly make such an order.[4]

The practical result of this ruling is as follows: Since I do not have jurisdiction over the "third-party" plans I cannot prevent them from making any payments to Senese. I do, however, have the power to prevent further funding of these plans by Senese's Local or any other IBT-affiliated entity. Thus, for example the "Chicago Area I.B. of T. Severance and Retirement Fund" will not receive any further contributions on behalf of Senese. That fund may, however, if it is consistent with its terms, make payments to Senese based on past contributions made prior to this ruling. In another example, the "Chicago Area I.B. of T. Health and Welfare Trust Fund" will also not receive any further contributions from Senese's Local or other IBT-affiliated sources. In this case it may very well be that without such contributions this fund will deny any future claims submitted by Senese. If, however, future claims can be fully or partially satisfied based on past contributions, then, in such an event, I can not prevent such payments being made.[5]

In accordance with this ruling, Local 703 is further directed not to disburse to Senese the benefits listed in the minutes of the Executive Board Meeting of Local 703, held on May 22, 1987 and May 26, 1987, specifically Local 703 shall not: (i) pay to Senese a severance allowance equal to sixty (60) weeks of pay; (ii) give Senese the full title of the union-owned automobile used by him; and (iii) pay the cost of health benefits for Senese or his family members

---

Investigations Officer may, if he deems it appropriate, bring charges against that respondent and the Union Local involved. *See, e.g.,* Investigations Officer v. Local 507.

**4.** Although I do not view this ruling as constituting an alienation of health and welfare plans, the Employee Retirement Income Security Act, 29 U.S.C. § 1056(d)(1), does not pre-empt the alienation of such plans. *See Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825 [108 S.Ct. 2182, 100 L.Ed.2d 836] (1988).

**5.** In addition, there is nothing preventing Senese from using his own personal funds to keep contributions to these "third-party plans" current.

(who are not separately covered by a health plan administered by Local 703) from the Local 703 Health and Welfare Trust Fund for the remainder of Senese's life.

Next, I direct any other IBT-affiliated entity that may contemplate doing so, not to make any payments of union funds to any health, welfare or employee benefit plan on Senese's behalf.

Additionally, I direct Local 727 and any other IBT-affiliated entity that may contemplate doing so not to make any future payments of union funds or disbursements of union assets to any health, welfare or employee benefit plan on behalf of Talerico, if such exist.

Finally, I direct Local 786 and any other IBT-affiliated entity that may contemplate doing so, not to make any future payments of union funds or disbursements of union assets to any health, welfare, or employee benefit plan on behalf of Cozzo, if such exist.

/s/Frederick B. Lacey
Frederick B. Lacey
Independent Administrator

Dated: November 29, 1990