**UNITED STATES of America, Plaintiff–Appellee,**

**Charles M. Carberry, Investigations Officer, Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO; the Commission of La Cosa Nostra; Anthony Salerno, also known as Fat Tony; Matthew Ianniello, also known as Matty the Horse; Anthony Provenzano, also known as Tony Pro; Nunzio Provenzano, also known as Nunzi Pro; Anthony Corallo, also known as Tony Ducks; Salvatore Santoro; Christopher Furnari, Sr., also known as Christie Tick; Frank Manzo; Carmine Persico, also known as Junior, also known as The Snake; Gennaro Langella, also known as Gerry Lang; Philip Rastelli, also known as Rusty; Nicholas Marangello, also known as Nicky Glasses; Joseph Massino, also known as Joey Messina; Anthony Fi-**

carotta, also known as Figgy; Eugene Boffa, Sr.; Francis Sheeran; Milton Rockman, also known as Maishe; John Tronolone, also known as Peanuts; Joseph John Aiuppa, also known as Joey O'Brien, also known as Joe Doves, also known as Joey Aiuppa; John Phillip Cerone, also known as Jackie the Lackie, also known as Jackie Cerone; Joseph Lombardo, also known as Joey the Clown; Angelo LaPietra, also known as The Nutcracker; Frank Balistrieri, also known as Mr. B.; Carl Angelo DeLuna, also known as Toughy; Carl Civella, also known as Corky; Anthony Thomas Civella, also known as Tony Ripe; General Executive Board, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Jackie Presser, General President; Weldon Mathis, General Secretary–Treasurer; Joseph Trerotola, also known as Joe T., First Vice President; Robert Holmes, Sr., Second Vice President; William J. McCarthy, Third Vice President; Joseph W. Morgan, Fourth Vice President; Edward M. Lawson, Fifth Vice President; Arnold Weinmeister, Sixth Vice President; John H. Cleveland, Seventh Vice President; Maurice R. Schurr, Eighth Vice President; Donald Peters, Ninth Vice President; Walter J. Shea, Tenth Vice President; Harold Friedman, Eleventh Vice President; Jack D. Cox, Twelfth Vice President; Don L. West, Thirteenth Vice President; Michael J. Riley, Fourteenth Vice President; Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis, Sixteenth Vice President; Salvatore Provenzano, also known as Sammy Pro, Former Vice President, Defendants,

Joseph Cimino, Jr., Appellant.

No. 1094, Docket 91–6280.

United States Court of Appeals, Second Circuit.

Argued March 12, 1992.

Decided May 27, 1992.

Elkan, Abramowitz, New York City (Lawrence S. Bader, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., of counsel), for appellant.

Christine H. Chung, Asst. U.S. Atty., New York City (Roger S. Hayes, Acting U.S. Atty., S.D.N.Y. and Gabriel W. Gorenstein, Asst. U.S. Atty., of counsel), for plaintiff-appellee.

Theodore L. Hecht, New York City (Charles M. Carberry, of counsel), for appellee.

Before: OAKES, Chief Judge, WALKER, Circuit Judge, and POLLACK, District Judge.[*]

* Honorable Milton Pollack, U.S. District Judge for the Southern District of New York, sitting by designation.

OAKES, Chief Judge:

In this appeal, we are asked to decide whether internal union disciplinary sanctions should be upheld against Joseph Cimino, Jr., former President and Business Agent of Local 107 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT"), AFL–CIO, in Philadelphia. The sanctions were imposed for Cimino's violation of the IBT Constitution through his knowing association with the Boss of the Philadelphia Family of La Cosa Nostra, Nicodemo Scarfo; the violation was proved essentially by three hearsay statements from former La Cosa Nostra members.

Cimino appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, *Judge*, upholding the sanctions imposed on him. 777 F.Supp. 1130. For the reasons set forth below, we affirm.

## I. Background

On March 14, 1989, Judge Edelstein approved a Consent Decree that settled civil racketeering charges brought by the Government against the IBT and members of the IBT General Executive Board. We have previously discussed this litigation in detail, as well as the disciplinary provisions of the Consent Decree. *See United States v. International Brotherhood of Teamsters (Yellow Freight Systems, Inc.)*, 948 F.2d 98, 100 (2d Cir.1991); *United States v. International Brotherhood of Teamsters (Friedman & Hughes)*, 905 F.2d 610, 612–13 (2d Cir.1990).

On August 30, 1990, the Investigations Officer charged Joseph Cimino, Jr., then President and Business Agent of Local 107 in Philadelphia, with violating Article II, section 2(a) and Article XIX, section 6(b) of the IBT Constitution through his knowing association with Nicodemo Scarfo, the boss of the Philadelphia Family of La Cosa Nostra, during the time he was an officer of Local 107.[1]

The Independent Administrator held a hearing on the charge against Cimino on November 29, 1990. In support of the charges, the Investigations Officer relied primarily on the declaration of Special Agent James T. Maher of the Federal Bureau of Investigation, to which extensive evidence was appended as exhibits. In the declaration, Special Agent Maher summarizes Cimino's association with the Philadelphia Family of La Cosa Nostra and particularly with Nicodemo Scarfo. Special Agent Maher's declaration is based largely on three hearsay declarations from admitted former members of the Philadelphia Family of La Cosa Nostra—former underboss Philip Leonetti, former capo Lawrence Merlino, and former soldier Nicholas Caramandi. Each statement offers a disheartening glimpse into Cimino's relationship with the Philadelphia Family in general and with Scarfo in particular.

For example, Leonetti characterizes Cimino as "the primary point of contact for the Philadelphia Family with the Teamsters Union in the vicinity of Philadelphia." He goes on to describe various favors which Cimino performed for Scarfo, such as using his union position to arrange for employment of individuals referred to him by members and associates of La Cosa Nostra. In return, Cimino received the support of the Philadelphia Family in his union office. He also describes a meeting which he attended during which Scarfo told Cimino that he "should not be worried in light of the recent murder of John McCullough, a Roofers Union official, because Cimino was under the protection of the Philadelphia Family, and could rely on the family for whatever assistance he or his union might require." The declarations of Merlino and

---

1. Article II, section 2(a) of the IBT Constitution requires every IBT member to "conduct himself ... in a manner so as not to bring reproach upon the Union." Article XIX, Section 6(b) of the IBT Constitution provides a non-exhaustive list of the bases for charges against IBT members, including "violation of [the] oath of office or of the oath of loyalty to the Local Union and the International Union."

Caramandi provide similar examples of the association between Cimino and Scarfo, the former of which includes perhaps the most disturbing allegation—that Cimino nodded in agreement when Scarfo proclaimed to him at a meeting, "I'm the union; I run Local 107."

The Investigations Officer also submitted two FBI surveillance reports, one of which states that a Special Agent and a student intern observed Cimino and a fellow union officer at a Philadelphia restaurant on October 19, 1982 with members of the Philadelphia Family. The agent reported that the groups conversed and that the La Cosa Nostra members bought drinks for Cimino and his colleague.

In his defense, Cimino offered his own testimony denying the allegations. He also introduced the testimony of six witnesses and submitted three affidavits. Most of the live witnesses offered only their opinions of Cimino's character. Some of this testimony, however, disputed the characterizations of particular events in the three hearsay declarations.

On May 28, 1991, after reviewing the hearing evidence and post-hearing submissions, the Independent Administrator ("IA") concluded in a written decision that the Investigations Officer satisfied his burden of proving that Cimino had associated knowingly with Scarfo. The IA found that "the evidence reveals a close relationship between Cimino and IBT Local 107 on the one hand, and Scarfo and the Philadelphia Family on the other." In particular, he found that "Cimino met with members of La Cosa Nostra on numerous occasions, performed services for the Philadelphia Family in exchange for its support, and met with Scarfo or his underlings over a period of years in a variety of places to discuss union business."

As a sanction, the IA banished Cimino permanently from the IBT, ordered Cimino to relinquish all of his IBT-affiliated union positions, and prohibited him from drawing any money from the IBT or any IBT-affiliated source. In addition, the IA ordered that no IBT or IBT-affiliated entity should make any further contributions on Cimino's behalf to any employee health, pension, and welfare plans, and directed that neither Local 107 nor any other IBT-affiliated entity should make any contributions to Cimino's legal expenses in connection with this matter.

On October 16, 1991, the district court affirmed the IA's decision in all respects. Cimino now appeals from the district court's order.

## II. Discussion

The precise standard of appellate review under the consent decree is difficult to identify. The decree provides in Paragraph 16 that the district court, when reviewing the actions of the Independent Administrator, "shall apply the same standard of review applicable to review of final federal agency action under the Administrative Procedure Act." Pursuant to this provision, the district court reviewed the IA's decision here to determine if it was arbitrary or capricious. *See* 5 U.S.C. § 706 (1988) (scope of review under the Administrative Procedure Act (APA)). The consent decree offers no similar guidance on the standard of review for issues raised in this court. Previously, we have not found it necessary to recite an exact standard of appellate review, and we need not do so today. *See Friedman & Hughes*, 905 F.2d at 616–17 (district court's order should be affirmed under "any reasonable standard of review"). Under even the supposedly more searching standard of review provided in the APA, which permits agency findings to be set aside only if they are "unsupported by substantial evidence", the district court's order must be sustained.[2] "Substantial evidence is more than a mere scin-

---

**2.** *But see Association of Data Processing v. Board of Governors,* 745 F.2d 677, 683–84 (D.C.Cir. 1984), where then Judge Scalia explained:

When the arbitrary or capricious standard is performing th[e] function of assuring factual support, there is no *substantive* difference be-

tween what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a "nonarbitrary" factual judgment supported only by evidence that is not substantial in the APA sense. . . .

tilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

The parties do not dispute that reliable hearsay is admissible in IBT union disciplinary hearings, *see United States v. International Brotherhood of Teamsters (Senese & Talerico),* 941 F.2d 1292, 1297–98 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991), or that reliable hearsay may constitute substantial evidence to support an administrative decision. *See Richardson v. Perales,* 402 U.S. 389, 402–06, 91 S.Ct. 1420, 1427–30, 28 L.Ed.2d 842 (1971). Rather, Cimino argues that the three incriminating hearsay statements of former Philadelphia Family La Cosa Nostra members are not sufficiently reliable to support the IA's conclusion that Cimino associated knowingly with Nicodemo Scarfo. We disagree.

At the outset, appellant argues that we should consider the statements presumptively unreliable, because the declarants made their statements pursuant to cooperation agreements with the Government. *See, e.g., Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986) ("[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination."). However, the concept of presumptive unreliability in our Sixth Amendment jurisprudence is inapposite where, as here, there is no danger of a criminal conviction based on unreliable evidence. *See id.* at 543, 106 S.Ct. at 2063. We are concerned only with whether this evidence was sufficiently reliable such that its admission does not call into question the "integrity and fundamental fairness" of Cimino's internal union disciplinary hearing. *Richardson,* 402 U.S. at 410, 91 S.Ct. at 1431.

A number of factors support the IA's and the district court's conclusion that the statements are reliable. As the IA noted, the statements corroborate each other in crucial respects. First, each declarant maintains that a close relationship existed between Cimino and Local 107, and Scarfo and the Philadelphia Family of La Cosa Nostra. Declaration of Leonetti ("Cimino acted as the primary point of contact for the Philadelphia Family with the Teamsters Union in the vicinity of Philadelphia."); Declaration of Caramandi ("Scarfo was Cimino's primary point of contact with the Philadelphia Family ... Cimino's relationship to Scarfo and the Philadelphia Family was general knowledge among members of the Philadelphia Family."); Declaration of Merlino ("It was generally understood that the Philadelphia Family used Cimino and his position in the Teamsters to perform favors for the benefit of mob members and associates as needed."). Moreover, Merlino and Caramandi both state that Scarfo believed Local 107 was part of the Philadelphia Family and that he controlled the union.

Furthermore, the statements paint a consistent picture of certain details regarding the relationship between Cimino and Scarfo. For example, each declarant asserts that Cimino arranged union job assignments for individuals referred to him by members and associates of the Philadelphia Family. Two of the declarants indicate that Cimino and Scarfo took precautions not to be seen together. Two of the declarants also identify the Saloon restaurant in Philadelphia as an afternoon meeting place where Cimino and Scarfo, or members communicating on Scarfo's behalf, discussed union business. An FBI surveillance report of October 19, 1982, introduced through Special Agent Maher's declaration, supports this claim by placing Cimino in the company of Philadelphia Family members at the Saloon on that afternoon.

In addition, portions of the former La Cosa Nostra members' statements describing the structure of the Philadelphia Family of La Cosa Nostra match portions of FBI Special Agent Maher's declaration where he undertakes a similar description.

Each statement is also signed by the declarant, witnessed by at least one federal law enforcement official, and contains an

attestation clause indicating that the statement was given voluntarily and is "true and accurate." Finally, the three declarants faced possible criminal sanctions for making false statements to the FBI. *See* 18 U.S.C. § 1001 (1988).

For these reasons, we conclude that the three hearsay statements were reliable. Moreover, alone they constitute "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that Cimino associated knowingly with Nicodemo Scarfo while serving as President and Business Agent of Local 107. *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. at 216. Although the precise details of Cimino's association with Scarfo provided in each declaration differ, the three statements taken together present a clear image of the influence Nicodemo Scarfo exercised over Local 107 through his relationship with Joseph Cimino.

Cimino also contends that his disciplinary sanctions should be overturned because the IA should have credited his testimony denying any involvement with Scarfo or the Philadelphia Family, the testimony of his six witnesses, and the testimony of his three affiants over the three hearsay declarations of the former La Cosa Nostra members. However, when reviewing the IA's decisions, we do not reweigh the evidence presented at the disciplinary hearing; instead, we look only to see whether adequate evidence was presented to support the IA's conclusion. *See Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Here, the three hearsay declarations of the former La Cosa Nostra members were adequate to support the IA's conclusion. Moreover, the IA found that Cimino's denials were "self-serving" and that he was not a credible witness. We find no reason to question this credibility determination, especially given the IA's superior vantage point. *Cf. NLRB v. American Geri–Care, Inc.*, 697 F.2d 56, 60 (2d Cir.1982) ("[C]redibility findings ... will

not be overturned unless they are 'hopelessly incredible' or they 'flatly contradict' either the 'law of nature' or 'undisputed documentary testimony.'") (quoting *NLRB v. Columbia Univ.*, 541 F.2d 922, 928 (2d Cir.1976)), *cert. denied*, 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 807 (1983).

Cimino bases his final claim for reversal on the IA's failure to make explicit credibility findings with respect to Cimino's other witnesses. However, there was no reason for the IA to make explicit findings on their credibility because four of Cimino's six witnesses offered only their opinions of his good character, rather than offering conflicting testimony that Cimino did not associate with Scarfo based on direct knowledge. The other two witnesses offered alternative explanations for a few events detailed in the hearsay declarations of the former La Cosa Nostra members. Because this testimony did not call into question the bulk of the allegations in the three hearsay declarations, a finding that these witnesses were not credible was unnecessary. Based on the foregoing, the order of the district court affirming the IA's decision in all respects is affirmed.