CARDAMONE, Circuit Judge:
On this appeal we review another in a series of cases arising from the March 14, 1989 consent decree that resulted from the settlement of a massive civil RICO suit instituted by the government against the International Brotherhood of Teamsters AFL-CIO (IBT) in 1988. Allegedly pervasive La Cosa Nostra infiltration, aided by the Teamsters’ Executive Board, and the use of fraud, embezzlement, bribery and extortion had led to domination of the Teamsters by criminal elements. The consent decree provided for ongoing supervision of the IBT by the United States District Court for the Southern District of New York. Under that decree the district court appointed an independent administra *70 tor, an investigator and an elections officer to oversee IBT operations and to discipline corrupt or dishonest union officials. United States v. IBT, No. 88 Civ. 4486 (DNE) (S.D.N.Y. March 14, 1989).
One of the two issues raised on appeal questions the propriety of the district court’s action in increasing a five-year suspension — imposed by the independent administrator on a local teamsters officer — to a lifetime suspension. This action was taken ostensibly to send a message to the union and reflected the district court’s view that IBT officers who commit certain sorts of violations of the consent decree should be turned out of the union — permanently. In acting without any legal or factual underpinning to support such an increase, the district court slid inadvertently from the narrow confines of a reviewing court into the more expansive but prohibited sphere of doing simply what it thought best. Our laws and, more specifically, the statute that governs the district court’s implementation of the consent decree require that findings be made regarding each individual’s conduct. A fixed view by a court that it should “throw the rascals out” as a group runs counter to notions of individual justice and fair play. Accordingly, this portion of the order appealed from is reversed and vacated.
BACKGROUND
Michael H. Dickens, Duane Wilson and Jack Weber, all officers of IBT Local 100 in Evendale, Ohio, appeal from a February 11, 1992 order of the United States District Court for the Southern District of New York (Edelstein, J.) affirming the December 23, 1991 decision of Independent Administrator Frederick B. Lacey. United States v. IBT, 787 F.Supp. 345 (S.D.N.Y. 1992). The independent administrator found that appellants had violated the IBT Constitution and suspended each of them from union activity for five years. The district court affirmed in all respects except as to Wilson’s sanction, which it increased from a five-year suspension to a lifetime suspension. Id. at 352.
The independent administrator, investigations officer and election officer derive their authority from the consent decree. Among the independent administrator’s duties are hearing and deciding union disciplinary charges brought by the investigations officer. On April 26, 1991 that officer charged Wilson, a Local 100 business agent, with assaulting Anthony Hooks, vice president of the local. The investigations officer also charged Dickens, Local 100’s president, and Weber, its secretary-treasurer, with embezzling $5,625 from union funds. A hearing took place in Cincinnati, Ohio where Local 100 has its offices. The investigations officer presented his case based entirely on hearsay.

Wilson

The assault by Wilson against Hooks occurred on March 20, 1991. Wilson’s conduct, it was asserted, violated the IBT membership oath, which forbids harming fellow union members, and also violated the IBT Constitution, which prohibits assaulting union officers on union premises. The fight took place in the union hall. Hooks and other executive board members had been upstairs auditing the local’s financial records, and Wilson and Weber were having a beer at a table downstairs. Wilson’s work for the day was finished. Weber was in the union hall to answer auditors’ questions. Hooks came downstairs to get refreshments for the auditing group and went into the taproom. Wilson followed and confronted Hooks about Hooks’ visit to a work site where Wilson was the business agent. According to Wilson, Hooks denied going to the site and then shoved Wilson, thereby triggering the altercation. Hooks’ version of the incident blames Wilson, asserting that Wilson started the fight by punching him in the face. Hooks insists his only action was to try to flee as Wilson chased, kicked and punched him. Hooks also declared that Weber, who had been drinking with Wilson, blocked his escape. Wilson and Hooks struggled with each other down a short hallway, out onto the loading dock and into a parking lot where the fight ended.
*71 When the police arrived they arrested Wilson and Weber for assault. Hooks, who was treated and released from a local hospital, filed charges against both of them. Wilson filed a counter-charge of assault against Hooks. The criminal charges against Hooks and Weber were dismissed. Wilson was found not guilty after a bench trial. After the hearing, at which both Wilson and Weber testified, the independent administrator concluded that police and medical reports corroborated the version of events presented in Hooks’ sworn statement. He further found Wilson’s actions amounted to strong-arm tactics because Wilson and Hooks were on opposite sides of a political split among Local 100 officers competing in an election for IBT convention delegates.

Weber and Dickens

Weber and Dickens were charged with embezzling a total of $5,625 in local funds because they spent union money without first obtaining executive board approval as required by the union’s bylaws. The investigations officer alleged that each of them had violated the IBT membership oath forbidding conduct that brings reproach upon the union and had also violated the provision of the IBT Constitution requiring compliance with the spending procedures outlined in IBT’s bylaws.
Of the two charges brought by the investigations officer, the first charge involved $5,000 contributed by Local 100 to pay expenses incurred by Dickens in October 1990 during a Florida charity golf tournament. Weber authorized the expenditure for which executive board approval had not been obtained. Dickens stated that because he conducted union business during the tournament, such approval was not required. He also insisted that attending the golf tournament was an established practice for Local 100 officers. Independent Administrator Lacey rejected this characterization in part because Dickens brought his wife along for the Florida trip, even though Local 100 funds were not used to pay her expenses. The administrator also relied on Local 100 bylaws and other financial records, which explicitly require executive board approval - for all charitable expenditures, and relied on Local 100 accounting practices that considered the trip a charitable contribution.
The second charge involved $625 used to purchase tickets for half of a table at a December 1990 charity dinner. Dickens and Weber testified that the executive board made an off-the-record agreement to split the dinner costs with another union organization. The administrator found this assertion implausible because union bylaws require specific authorization for charitable spending. Minutes from the same board meeting recorded an unrelated charitable expenditure and stated that all other charitable requests were tabled. Four executive board members submitted sworn statements indicating that no off-the-record approval for this expenditure had been given.
Administrator Lacey in his December 23, 1991 decision therefore found, using the “just cause” standard of proof, that Wilson, Dickens and Weber were guilty of the disciplinary charges brought against them. He suspended each of them from holding IBT-affiliated positions or drawing compensation from IBT sources for five years. The order also stopped IBT contributions on their behalf to the employees’ benefit plans for five years. Wilson was instructed to stay away from Hooks.
DISCUSSION
I Proof at Hearing

A. Hearsay

Appellants contend they were deprived of a full and fair hearing as required under the consent decree because in reaching his decision the independent administrator credited unreliable hearsay evidence presented by the investigations officer. The independent administrator’s decisions under the consent decree are afforded great deference. See United States v. IBT (Friedman and Hughes), 905 F.2d 610, 616-17 (2d Cir.1990). Pursuant to paragraph K.16 of that decree, a district court is to apply the same standard of review it would apply to final agency action under the Administrative Procedure Act (APA), 5 *72 U.S.C. § 706 (Supp.1992). The APA generally allows the reviewing court to set aside action only when it is arbitrary and capricious, an abuse of discretion or not in accordance with law. § 706(2)(A). In certain eases, the APA permits a court to set aside agency findings that are unsupported by substantial evidence. § 706(2)(E).
The appropriate standard of appellate review of an independent administrator’s decision — after a district court has reviewed it — is an open question in this Circuit. See United States v. IBT (Parise), 970 F.2d 1132, 1137 (2d Cir.1992). It may well be that we are without authority to review the administrator’s findings but must limit our review to the findings and conclusions of the district court. Yet, because the administrator’s findings in the instant matter would survive our review under both the arbitrary and capricious standard and the substantial evidence standard, it is unnecessary for us to decide whether our review extends to the administrator’s findings.
Appellants argue it was arbitrary and capricious for the administrator to credit unreliable hearsay statements of union officials who were appellants’ political rivals. They also challenge the sufficiency of the documentary evidence and the hearsay police and medical reports surrounding Wilson’s fight with Hooks. We recognize that Local 100 was either in the midst of a power struggle between different political factions or caught up in a large-scale personality conflict in which two groups of union officials were unable to agree on routine business decisions on a day-to-day basis. Whether the proof is viewed as coming from political or personal rivals will not change the result in the case at hand.
Hearsay evidence may constitute substantial evidence in an administrative hearing so long as it is reliable. See Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Reliable hearsay is admissible in IBT disciplinary proceedings. See United States v. IBT (Cimino), 964 F.2d 1308, 1312 (2d Cir. 1992); United States v. IBT (Senese & Talerico), 941 F.2d 1292, 1297-98 (2d Cir. 1991), cert. denied, — U.S.-, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). Indicators of reliability include the opportunity to cross-examine the declarant, the detail contained in written reports, corroboration among independent hearsay reports, and the preparation of reports according to an established routine. 402 U.S. at 402-04, 91 S.Ct. at 1427-29.
Despite the fact that the hearsay declar-ants were not cross-examined, the evidence before the independent administrator was reliable and supports his decision. Both the police report describing Wilson’s arrest and the medical report describing Hooks’ injuries were made in the course of business by neutral third parties. These documents corroborated Hooks' version of the fight with Wilson. With regard to the embezzlement charges, the minutes of the local’s executive board meetings and accounting records are similarly reliable business records. They provide independent support for the embezzlement charges. Hence, whether the administrator may or may not have credited the unreliable hearsay depositions of Weber’s and Dickens’ union rivals is not a matter of concern because the conclusion the administrator reached was amply supported by the recited proof from business records.

B. Sufficiency

Weber and Dickens further insist that the evidence is insufficient to establish the elements necessary to prove embezzlement because, being new to their positions, they believed in good faith that the tournament expenditure did not require executive board approval and that the dinner expense had been authorized. Because embezzlement is a specific intent offense, a defendant may not be said to have a fraudulent intent when there is a finding that he has a “good-faith belief both that the funds were expended for the union’s benefit and that the expenditures were authorized (or would be ratified) by the union.” United States v. Butler, 954 F.2d 114, 118 (2d Cir.1992). See also United States v. Ottley, 509 F.2d 667, 671 (2d Cir.1975).
It was not arbitrary and capricious for the administrator here to discredit the *73 good-faith assertions of Weber and Dickens. Supporting his ruling were detailed union bylaws and accounting rules that explicitly require executive board approval for charitable expenditures. Because Dickens and Weber were self-described “reformers” fully aware of past abuses within the IBT, the administrator correctly discounted appellants’ excuses that they were new to their jobs and relied on past local practices. Moreover, the administrator was justified in giving credence to the executive board’s minutes of meetings 'instead of to appellants' assertions that some expenses were authorized “off the record.” It was not arbitrary to believe the Florida trip and dinner tickets were really personal entertainment — because Weber and Dickens benefitted personally from these charitable events — and only ostensibly for business or charitable purposes.
Turning to Wilson’s case, he contends his behavior does not fall within the terms of the consent decree because fighting is neither “corrupt” nor “dishonest,” as those terms are used in paragraph F.12.(A) in describing the scope of the decree’s disciplinary authority. This argument is without merit. It was reasonable to believe the fight was Wilson’s strong-arm attempt to intimidate Hooks, a political rival within the union. The use of violent tactics to obtain political power in the union is obviously within the scope of the consent decree. See United States v. IBT (Cherilla), 782 F.Supp. 256, 261 (S.D.N.Y.1992).
Thus, we agree with the district court that it was not arbitrary or capricious for the independent administrator to find that Weber’s and Dickens’ actions amounted to embezzlement of union funds and that Wilson’s fight with Hooks violated the terms of the decree.
II Sanctions
Discussion proceeds to the district court’s increase of Wilson's sanction from a five-year to a lifetime suspension from union activity. The district judge derives his authority in this case from the terms of the consent decree, which incorporates the APA standards of review applicable to final agency action. As already noted, the language of the APA is clear: a reviewing court may set aside final agency action only if it is arbitrary and capricious or otherwise contrary to law. 5 U.S.C. § 706(2)(A). The district court’s order expressly invokes this standard in upholding the independent administrator’s findings of fact. But no such finding is made with regard to Wilson’s penalty, the district court contenting itself with the observation that “[t]his court has held” that lifetime suspensions are appropriate sanctions for “strong-arm tactics.” 787 F.Supp. at 352.
When enforcing a consent decree, a court is constrained to read and apply its terms “within its four corners” and may not look beyond the document to satisfy one of the parties’ purposes. See United States v. Armour & Co., 402 U.S. 673, 682, 91 S.Ct 1752, 1757, 29 L.Ed.2d 256 (1971). Because the IBT consent decree invokes the APA as the appropriate standard of review, a reviewing court’s power is limited to that granted under the Act.
According to the Act, the scope of judicial review of an administrative sanction is limited. A court may only consider whether the administrator made “an allowable judgment in [his or her] choice of the remedy.” Sokoloff v. Saxbe, 501 F.2d 571, 576 (2d Cir.1974) (quoting Butz v. Glover Livestock Comm’n Co., 411 U.S. 182, 189, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142 (1973)). The Butz standard for review of sanctions is the equivalent of the arbitrary and capricious standard. See Willy’s Grocery v. United States, 656 F.2d 24, 26 (2d Cir. 1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982). The reviewing court should not overturn the independent administrator’s choice of sanctions unless it finds the penalty “unwarranted in law” or “without justification in fact.” See Butz, 411 U.S. at 185-86, 93 S.Ct. at 1458.
In administering the IBT consent decree, the district'court in past cases has itself utilized the appropriate standard of review with regard to sanctions. See United States v. IBT (Senese), 753 F.Supp. 1181, 1185 (S.D.N.Y.1990), aff'd, 941 F.2d *74 1292 (2d Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992) (applying arbitrary and capricious standard to review of sanction involving health and welfare plans). It accurately observed in the instant case that on several occasions lifetime suspensions were imposed on union officials who used violence as a means of political influence. 787 F.Supp. at 352. But it failed to make any finding that the administrator’s five-year sanction was arbitrary and capricious. Without such a predicate finding, a reviewing court (here the district court) has no legal basis on which to modify the sanction imposed by the independent administrator.
Absent such a finding, it is questionable whether the trial court had the authority to set aside the penalty imposed by the administrator. For it to then proceed to set a different penalty, one the district court thinks more appropriate, is to improperly substitute its judgment for that of the independent administrator. The better practice in such a case, it seems to us, is for the district court to set the penalty aside when it thinks the administrator arbitrarily fixed it either too high or too low, and remand the matter to the administrator with instructions to assess the penalty anew.
Nonetheless, we need not remand for such a procedure to be followed where the record is complete enough to resolve the issue before us. The experienced independent administrator — himself a former federal district court judge — heard the witnesses and fixed a penalty. On this record there is no basis for finding the penalty chosen by the administrator was either arbitrary or capricious. Consequently, the five-year penalty he originally imposed should remain undisturbed.
CONCLUSION
Insofar as the district court’s order increased Wilson’s penalty to a lifetime suspension, it is reversed and vacated, and the independent administrator’s five-year suspension remains in force. In all other respects the order of the district court is affirmed.