UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION II [1] OF the INDEPENDENT REVIEW BOARD.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Feb. 2, 1994.

---

1. While this application is the second application filed by the Independent Review Board or a member thereof, *see United States v. IBT*, 808 F.Supp. 271 (S.D.N.Y.1992), this application was filed with the Court bearing the appellation "Application I of the Independent Review Board."

In order to avoid confusion, this Memorandum & Order bears the caption "In Re: Application II of the Independent Review Board." It should be noted, however, that papers bearing the caption "Application I of the Independent Review Board" refer to the instant application.

Judith A. Scott, Gen. Counsel, Intern. Broth. of Teamsters, for defendants.

Steven C. Bennett, Asst. U.S. Atty., for plaintiff.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America against, *inter alia*, defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). Pursuant to Paragraph O of the Rules and Procedures for Operation of the Independent Review Board for the International Brotherhood of Teamsters ("IRB Rules"), the Independent Review Board ("IRB") has made an application to this Court seeking approval of its decision that compromise agreements approved by the IRB should be submitted to this Court for review and, if approved by this Court, entered as orders of the Court. No party to this action opposes this application. *See* Letter to the Court, dated February 1, 1994, from Judith A. Scott, General Counsel to the International Brotherhood of Teamsters; Letter to the Court, dated September 21, 1993, from Steven C. Bennett, Assistant United States Attorney. For the reasons discussed below, this application is approved.

## DISCUSSION

The IRB is vested with broad investigatory and disciplinary powers. The IRB's investigatory authority is coextensive with that of the General President and the General Secretary–Treasurer under the IBT Constitution and applicable law. *See United States v. IBT*, 803 F.Supp. 761, 768 (S.D.N.Y.1992), *aff'd in relevant part*, 998 F.2d 1101 (2d Cir.1993). Under the Consent Decree, the IRB must use this authority, among other things, to investigate allegations of corruption within the IBT, allegations of influence by La Cosa Nostra or other organized crime

groups upon IBT members or activities, and any failure of IBT members or leadership to cooperate fully with the IRB. *Id.; see* Consent Decree § G(a). When the IRB perceives the existence of impermissible conduct, it recommends the filing of disciplinary charges against those allegedly engaged in impermissible conduct.[2]

In order to resolve such charges, an individual alleged to have engaged in wrongdoing may enter into a compromise agreement with an IBT local affiliate. When such an agreement is entered into, it is submitted to the IRB for review and approval. IRB Rules, ¶ I.6 & ¶ I.7. The IRB then reviews the agreement to determine whether it adequately resolves the underlying disciplinary matter in a "lawful, responsible, and timely manner." *Id.* If the IRB finds that the compromise agreement resolves the matter in a lawful, responsible, and timely manner, the agreement is approved.

This procedure closely tracks the schema implemented during the first phase[3] of this litigation. During the first phase, some individuals charged by the Investigations Officer with disciplinary infractions ("respondents") sought to settle outstanding disciplinary charges. When a compromise agreement settling charges was signed by the Investigations Officer and a respondent, it was submitted to the Independent Administrator for review. If the Independent Administrator

then approved it, the compromise agreement was submitted to this Court for review. Upon approval by this Court, the agreement was entered as an order of the Court. Review of compromise agreements guaranteed that all such agreements advanced the remedial purpose of the Consent Decree; entry of approved compromise agreements as orders of this Court promoted compliance with the terms of those agreements by subjecting signatories to civil and criminal contempt sanctions in the event that they violated a compromise agreement, *see, e.g., United States v. IBT,* 816 F.Supp. 864 (S.D.N.Y.1992), *aff'd,* 986 F.2d 15 (2d Cir.1993).

By this application, the IRB seeks approval of its decision, reached at a meeting held on July 20, 1993, to submit by application all compromise agreements approved by the IRB to this Court for review. *See* IRB Rules, ¶ O.[4] As during the first phase of this litigation, such a procedure will promote the goals of the Consent Decree and force signatories to compromise agreements to adhere rigidly to the terms of those agreements.

■ This application is authorized by the IRB Rules, sound policy in light of the goals of the Consent Decree, and fair to signatories to compromise agreements. IRB Rules, paragraph M(1), provides that the IRB must be apprised of any disciplinary decision of the IBT. Under the IRB Rules, moreover, any IRB decision affirming, modifying, or

---

**2.** For a discussion of the IRB's disciplinary authority, *see United States v. IBT,* 803 F.Supp. at 768–69; Consent Decree § G. "[T]he Consent Decree empowers the IRB to eradicate corruption on its own initiative and to monitor IBT efforts to purge corruption in the Union. In this way, the IRB may be considered a successor to the Investigations Officer and the Independent Administrator." *United States v. IBT,* 803 F.Supp. at 769.

**3.** The certification of the 1991 IBT General Election results by the court-appointed Election Officer marked the end of the first phase, and the beginning of the second phase, of this litigation under the Consent Decree. *See United States v. IBT,* 803 F.Supp. at 768; Consent Decree § G.

**4.** In order to avoid misunderstanding in the event that this Court or the IRB rejects a compromise agreement, the IRB proposes that all

such agreements contain a paragraph informing signatories that the agreement will be reviewed and may be rejected. Language to this effect is appropriate. The following should be included in all compromise agreements:

I understand and agree that this agreement will be submitted to the Independent Review Board ("IRB") for its review and, if approved by the IRB, it will be submitted to the United States District Court for the Southern District of New York for review. I understand that, if this agreement is approved by the United States District Court for the Southern District of New York, it will be entered as a Court Order. I understand that no representations have been made as to whether this agreement will be approved by the IRB or the United States District Court for the Southern District of New York.

reversing such a decision "shall [be] submit[ted] to this Court to be entered as an order of the Court." IRB Rules, ¶ M(1). Similarly, any compromise agreement that resolves recommended or pending disciplinary charges, which has been approved by the IRB, must be submitted to this Court for review. *See* IRB Rules, ¶ O; *see also* IRB Rules, ¶ K.1 & ¶ K.2.

■ Entry of compromise agreements as Court orders also serves a crucial enforcement purpose: One who violates the terms of a compromise agreement is made subject to criminal and civil penalties for contempt. Concurrently, the availability of these sanctions acts as a deterrent to wrongdoing. The threat of stringent sanctions is a potent inducement to compliance with the terms of compromise agreements. Thus, entry of compromise agreements as orders of the Court is essential to the effective enforcement of compromise agreements and, ultimately, will bolster the IRB's ability to police corruption within the IBT.

■ Finally, I find that this procedure is fair to signatories to compromise agreements. One who enters into a compromise agreement understands that compliance with the terms of that agreement is required. Entry of approved agreements as orders of the Court merely underscores a central precept of compromise agreements—that the terms of such agreements must be rigidly followed. This procedure has the added benefit of putting all parties on notice as to the importance of strict and unequivocal compliance with the terms of compromise agreements. Once an agreement is entered as an order of the Court, the parties to that agreement cannot legitimately complain that they were not aware that the terms of the agreement were binding.

In sum, this application is authorized by the IRB Rules, will substantially further the goals of the Consent Decree, is fair to signatories to compromise agreements, and is unopposed. Accordingly, this application is approved.

SO ORDERED.