UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.

In re Application XXIII of the INDEPENDENT REVIEW BOARD.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Nov. 21, 1995.

Mary Jo White, United States Attorney for the Southern District of New York (Karen B. Konigsberg, Assistant United States Attorneys, of counsel), for United States.

Judith A. Scott, General Counsel, International Brotherhood of Teamsters, Washington, D.C., for defendant.

Barbara Zack Quindel, Washington, D.C., for Election Officer.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America against, *inter alia*, defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). Pursuant to the Rules and Procedures for Operation of the Independent Review Board for the International Brotherhood of Teamsters ("IRB Rules"), ¶ O, the Independent Review Board ("IRB") has made an application to this Court seeking approval of its decision in this matter.

Application XXIII presents for this Court's review the decision of the IRB regarding disciplinary charges brought against Michael Porta, Jr. ("Porta"), a former member of IBT Local 807 located in Long Island City, New York. These charges are contained in an investigative report issued by the IRB on January 30, 1995.[1] In this report, the IRB charged Porta as follows:

> While an IBT member, you brought reproach upon the IBT and violated your membership oath in violation of Article II,

Section 2(a) and Article XIX, Section 7(b)(1), (2) and (9) [of the IBT Constitution] to wit:

> While a member of IBT Local 807, you knowingly associated with members of organized crime including Anthony "Sonny" Ciccone and Anthony Anastasio.

(Proposed Charges Against Local 807 Member Michael Porta, Jr., (January 30, 1995), at 25–26.) The IRB forwarded these charges and its report to the IBT on January 30, 1995.

By letter dated January 31, 1995, the IBT referred the charges against Porta back to the IRB for adjudication. A hearing on the above-quoted charges was scheduled for March 15, 1995 ("the hearing"). On February 1, 1995, the IRB sent a Notice of Hearing ("the Notice"), a copy of the IRB investigative report with exhibits, and the IRB Operating and Hearing Rules to Porta. The Notice informed Porta that the purpose of the hearing was to determine whether the charges contained in the investigative report were supported by the evidence, and stated that Porta would "be permitted to present any facts, evidence, or testimony that is relevant to the issues before the IRB." (Independent Review Board Notice of Hearing (January 31, 1995), at 1–2.) The Notice further informed Porta that he had the right to be represented at the hearing by counsel or by an IBT member. *Id.* at 1. Due to a variety of conflicts, Porta's hearing was rescheduled several times and was held June 7, 1995.

At the hearing, the IRB heard testimony from Special Agent Carmine Russo ("Russo") of the Federal Bureau of Investigation ("FBI"), "an expert witness in organized crime trials," (Opinion and Decision of the Independent Review Board, In re: Michael Porta, Jr. (September 29, 1995) at 2 n. 2) ("IRB Opinion and Decision"), and reviewed

---

1. The IRB is vested with broad investigatory and disciplinary powers. The IRB's investigatory authority is coextensive with that of the General President and the General Secretary–Treasurer under the IBT Constitution and applicable law. *See* February 2, 1994, Memorandum & Order, 842 F.Supp. 1550, 1551–52 (S.D.N.Y.1994); *see also* August 19, 1991, Opinion & Order, 803 F.Supp. 761, 768 (S.D.N.Y.1992), *aff'd in relevant*

*part,* 998 F.2d 1101 (2d Cir.1993). Under the Consent Decree, the IRB must use this authority, among other things, to investigate allegations of corruption within the IBT, allegations of influence by La Cosa Nostra or other organized crime groups upon IBT members or activities, and any failure of IBT members or leadership to cooperate fully with the IRB. 842 F.Supp. at 1551–52; *see* Consent Decree § G(a).

Russo's sworn declaration, which was submitted as an exhibit. The IRB also reviewed and submitted as an exhibit the sworn declaration of FBI Special Agent Brian Taylor upon which Russo's testimony at the hearing relied. IRB Opinion and Decision at 1 n.1. Russo testified that Porta was a member of the Gambino Family of La Cosa Nostra in New York and that Porta, at all pertinent times, had associated with members of organized crime. Russo testified that his conclusion was based on his experience investigating organized crime in the New York City area, his review of documents, and his conversations with Special Agents over whom he had supervisory responsibility. The IRB found Russo's testimony and sworn declaration to be credible. IRB Opinion and Decision at 2 n. 2, 10.

Following Russo's testimony, Porta appeared and testified at the hearing. Porta was represented by counsel, Mr. Charles L. Weintraub ("Weintraub"), at the time. Although Porta stated that he knew many individuals who are alleged to be members of organized crime or associated with members of organized crime, at the time he associated with these people he was unaware of the fact that these people were alleged to be members of organized crime or associated with members of organized crime. Porta further claimed that he was not a member of organized crime and was not associated with members of organized crime. Porta also testified about his membership in Local 807, the type of labor he performed while a member of Local 807, and his knowledge that some members of Local 807 had been charged with being members of organized crime during his membership in Local 807.

Following this testimony, Porta's attorney, Weintraub, called four witnesses to testify on Porta's behalf. Weintraub first called James Lawrence ("Lawrence"), a member of Local 807. Lawrence testified that he knew Porta, worked with Porta, discussed personal matters with Porta, and considered Porta to be an honest person.

Weintraub also called Bernard Weisman ("Weisman"), a sales representative for a company that sells children's and adults' furniture and accessories. Weisman stated on the record that he knew Porta because Porta had assisted him during several gift shows at the Javits Center when Porta worked at the Javits Center while a member of Local 807. Weisman testified that, as a result of this assistance, he considered Porta to be an excellent and courteous worker. Weisman further stated that Porta had never asked Weisman for money or otherwise acted improperly during their encounters at the Javits Center.

The third witness Weintraub called was Francis T. Genco ("Genco"). From 1990 to 1995, Genco was the manager of installation and dismantle services at Freeman Decorating Company ("Freeman"), the largest general contractor at the Javits Center. Genco testified that during his employment by Freeman he came into contact with Porta at the Javits Center on more than one occasion. Specifically, Porta worked for Genco as a rigger on various exhibits, such as the auto show. Genco described Porta as an excellent worker who interacted well with his co-workers, other tradesmen, and clients. In addition, Genco testified that he never saw Porta engage in any illegal or questionable activities at the Javits Center.

Finally, Weintraub called Stanley R. Gilbert ("Gilbert") to testify at the hearing on Porta's behalf. Gilbert testified that he had known Porta at least twenty years. Gilbert further stated that he had visited the social club at 461 Court Street in Brooklyn, New York, and that he never saw Porta in the club. When asked by members of the IRB, Gilbert stated that he did not know certain alleged members of organized crime and that he had never heard any discussions regarding the social club's ties to organized crime.

At the conclusion of the hearing, the IRB imposed a post-hearing schedule on the hearing participants. The IRB informed the participants that fourteen days following the IRB's receipt of the hearing transcript, the Investigations Officer Mr. Charles M. Carberry ("the Investigations Officer") was required to serve and file a post-hearing memoranda. Then, ten days after Porta received the IRB's memoranda, Porta was required to deliver his answering memoranda and file it

with the IRB, after which time the Investigations Officer had five days to reply.

Porta submitted a post-hearing memorandum, dated August 18, 1995, to the IRB. In this document, Porta argued that his contacts with members of organized crime "were infrequent, of. short duration, ... and were frequently serendipitous." Post Hearing Memorandum of Michael Porta, Jr. at 1 (August 18, 1995). Porta also asserted that, because he "was never informed by the IBT that casual contacts with individuals allegedly involved with organized crime could be considered a violation of the IBT Constitution," it would be unfair to subject him to a penalty based on such conduct. *Id.* at 2. Porta further claimed that his "contacts with individuals allegedly tied to organized crime [are] significantly diminished because he never held office with nor was ever employed in any capacity by Union 807...." *Id.* Finally, Porta contended that the IRB should not find that he knowingly associated with members of organized crime while a member of the IBT because "the casual nature" of his contacts with members of organized crime had a "lack of any impact" upon Local 807 and because Porta's "exemplary" work performance rendered such a finding inappropriate. *Id.*

■ Based on the evidence produced at the hearing, the IRB held that it had been established by a preponderance of the evidence, *see* IRB Rules, ¶ J. 6, that Porta at all pertinent times had "brought reproach upon the IBT by knowingly associating with members of the Gambino LCN Family while a member of Local 807, through contacts that were purposeful and not incidental or fleeting." IRB Opinion and Decision at 16. The IRB found the hearsay evidence it heard at Porta's hearing to be reliable. *Id.* at 10. It further found that Porta's testimony at the hearing and in depositions confirmed that Porta knowingly associated with various members of organized crime while he was a member of Local 807. *Id.* at 10–15. In addition, the IRB addressed the four arguments Porta raised in his post-hearing memorandum and rejected each one. *Id.* at 16–18. Although the IRB's Opinion and Decision did not address the testimony given at

the hearing by Porta's four witnesses, it was not obliged to do so because none of the testimony presented by these witnesses "call[ed] into question the bulk of the allegations" made against Porta by the IRB. *See United States v. International Brotherhood of Teamsters (Joseph Cimino, Jr.),* 964 F.2d 1308, 1312 (2d Cir.1992), *aff'g* 777 F.Supp. 1130 (S.D.N.Y.1991).

Having held that the charges against Porta had been proved, and having considered the seriousness of the charges, the IRB permanently barred Porta from holding membership in or any position with the IBT or any IBT-affiliated entity in the future. IRB Opinion and Decision at 18–19. The IRB further ruled that Porta may not hereafter obtain employment, consulting, or other work with the IBT or any IBT-affiliated entity. *Id.* at 18–19.

This Court received IRB Application XXI-II consisting of the IRB's Opinion and Decision concerning Porta together with supporting exhibits on October 6, 1995. By letter dated that same day, Chambers informed Porta that if he wished to object to the IRB's findings and rulings, he could submit any objections to IRB Application XXIII to this Court no later than fourteen days from the date of the letter. Letter from James C. Maroulis, Law Clerk to the Honorable David N. Edelstein, United States District Judge, to Charles L. Weintraub, Esq., Defense Counsel (October 6, 1995) (on file with Clerk of the Southern District of New York). On October 25, 1995, Chambers spoke with Weintraub and learned that Porta had terminated Weintraub's services effective that day, October 25, 1995. Subsequently, Weintraub confirmed this conversation in letters addressed to this Court. Letter from Charles L. Weintraub, Esq., to the Honorable David N. Edelstein, United States District Judge (November 6, 1995) (on file with Clerk of the Southern District of New York); Letter from Charles L. Weintraub, Esq., to the Honorable David N. Edelstein, United States District Judge (October 26, 1995) (on file with Clerk of the Southern District of New York). On October 27, 1995, this Court received via Express Mail a handwritten letter from Porta dated October 27, 1995, objecting to the

IRB's findings and rulings. Porta included with this letter a copy of the post-hearing memorandum prepared by Weintraub for Porta on August 18, 1995.

■ Porta's October 27, 1995, letter objecting to the IRB's Opinion and Decision is untimely because this Court did not receive it until well-past the fourteen-day deadline set by this Court for the submission of objections. The fact that Porta terminated his attorney's services does not alter the status of Porta's submission as untimely for two reasons. First, this termination occurred after the fourteen-day deadline for the submission of objections had expired. Second, Porta fired Weintraub only after Weintraub received this Court's letter regarding the submission deadline for submitting objections. Porta had ample notice of his time to submit objections, and he cannot unilaterally extend his time to file objections by terminating Weintraub's services. Consequently, this Court did not consider Porta's objections in its review of IRB Application XXIII.

■ Having carefully reviewed the IRB's Opinion and Decision, as well as the exhibits attached thereto, this Court finds that the IRB's decision is not arbitrary or capricious. *See* IRB Rules, ¶ O ("In reviewing actions of the IRB, this Court shall apply the same standard of review applicable to review of final federal agency action under the Administrative Procedure Act."); *see also* May 6, 1994 Opinion & Order, *slip op.* at 4, 1994 WL 178135 (S.D.N.Y.1994).

Moreover, this Court's finding in the instant case would remain unchanged even if this Court considered the objections Porta submitted to the IRB's Opinion and Decision. This Court has reviewed the substance of Porta's objections and finds that each of them is meritless.

Accordingly, the decision of the IRB is affirmed in its entirety.

SO ORDERED.