**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.**

**In re Application XXII of the Independent Review Board.**

**No. 88 Civ. 4486.**

United States District Court, S.D. New York.

Dec. 8, 1995.

Mary Jo White, United States Attorney for the Southern District of New York (Karen B. Konigsberg, Assistant United States Attorneys, of counsel), for United States.

Judith A. Scott, General Counsel, International Brotherhood of Teamsters, Washington, D.C., for defendant.

Barbara Zack Quindel, Washington, D.C., for Election Officer.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America against, *inter alia*, defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). Pursuant to the Rules and Procedures for Operation of the Independent Review Board for the International Brotherhood of Teamsters ("IRB Rules"), ¶ O, the Independent Review Board ("IRB") has made an application to this Court seeking approval of its decision in this matter.

Application XXII presents for this Court's review the decision of the IRB regarding disciplinary charges brought against Joseph Cammarano, Jr. ("Cammarano"), a former member of IBT Local Union 282, located in Lake Success, New York. These charges are contained in an investigative report issued by the IRB on January 27, 1995.[1] In this report, the IRB charged Cammarano as follows:

> While an IBT member, you brought reproach upon the IBT and violated your membership oath in violation of Article II, Section 2(a) and Article XIX, Section 7(b)(1), (2) and (9) [of the IBT Constitution] to wit:

> While a member of IBT Local 282, you were a member of organized crime and knowingly associated with members of La Cosa Nostra including but not limited to Salvatore Vitale, Peter Rosa, Michael Cardello and Joseph DeSimone.

(Independent Review Board, Proposed Charges Against Local 282 Member Joseph A. Cammarano, Jr. 10–11 (January 27, 1995).) The IRB forwarded these charges and its report to the IBT on January 27, 1995.

By letter dated January 30, 1995, the IBT referred the charges against Cammarano back to the IRB for adjudication. A hearing on the above-quoted charges was scheduled for February 24, 1995 ("the hearing"). On January 30, 1995, the IRB sent a Notice of

---

1. The IRB is vested with broad investigatory and disciplinary powers. The IRB's investigatory authority is coextensive with that of the General President and the General Secretary–Treasurer under the IBT Constitution and applicable law. *See* February 2, 1994, Memorandum & Order, 842 F.Supp. 1550, 1551–52 (S.D.N.Y.1994); *see also* August 19, 1992, Opinion & Order, 803 F.Supp. 761, 768 (S.D.N.Y.1992), *aff'd in relevant part,* 998 F.2d 1101 (2d Cir.1993). Under the Consent Decree, the IRB must use this authority, among other things, to investigate allegations of corruption within the IBT, allegations of influence by La Cosa Nostra or other organized crime groups upon IBT members or activities, and any failure of IBT members or leadership to cooperate fully with the IRB. 842 F.Supp. at 1551–52; *see* Consent Decree § G(a).

Hearing ("the Notice"), a copy of the IRB investigative report with exhibits, and the IRB Operating and Hearing Rules to Cammarano. The Notice informed Cammarano that the purpose of the hearing was to determine whether the charges contained in the investigative report were supported by the evidence, and the Notice stated that Cammarano would "be permitted to present any facts, evidence, or testimony that is relevant to the issues before the IRB." (Independent Review Board Notice of Hearing 1–2 (January 31, 1995).) The Notice further informed Cammarano that he had the right to be represented at the hearing by counsel or by an IBT member. *Id.* at 1.

At the hearing, the IRB heard testimony from Special Agent Brian Taylor ("Taylor") of the Federal Bureau of Investigation ("FBI"), "an FBI expert with extensive experience in organized crime investigations. . . ." Opinion and Decision of the Independent Review Board, In re: Joseph Cammarano, Jr. 3 (September 15, 1995) ("IRB Opinion and Decision"). The IRB also reviewed Taylor's sworn declaration, which was submitted as an exhibit. (IRB Investigative Report, In re: Joseph Cammarano, Jr., Ex. 3.) Taylor's testimony was based on his experience investigating organized crime in the New York City area and his review of documents and photographs. The IRB found Taylor's testimony and sworn declaration to be credible. IRB Opinion and Decision at 3.

At the hearing, Taylor testified that Cammarano was a member of the Bonnano Family of La Cosa Nostra ("LCN") in New York and that Cammarano, at all pertinent times, had associated with members of organized crime. Taylor stated that Cammarano's "father and brother both are prohibited from holding Local 282 memberships on the grounds that they were members of organized crime or associated with such members," and that both his father-in-law and his close friend were Bonnano LCN family members. *Id.* Taylor further testified that Cammarano frequently visited the Grand Avenue social club, an establishment that the FBI considers to be controlled by a member of the Bonnano LCN family, and that Cammar-ano ate meals at the club with various members of the Bonnano LCN family. *Id.* at 3–4.

Following Taylor's testimony, Cammarano appeared and testified at the hearing. Cammarano was represented by counsel, Mr. Albert A. Gaudelli, Esq. ("Gaudelli"), at the time. In his testimony, Cammarano conceded that he knew many individuals who are alleged to be members of organized crime or associated with members of organized crime. IRB Opinion and Decision at 5; (Hearing Transcript, In re: IRB Charges Against Local 282 Member Joseph A. Cammarano, Jr. 111–15, 123–27 (February 24, 1995) ("Tr.").) Cammarano further admitted that he frequently visited the Grand Avenue social club and that he had dined with various individuals alleged to be members of organized crime. IRB Opinion and Decision at 5; (Tr. 126–27, 135). Cammarano also testified about his membership in Local 282 but denied that he knew that local members were involved with organized crime and that there was corruption within the union. (Tr. 141–45.)

In addition to his hearing testimony, the IRB reviewed and received as an exhibit a sworn declaration given by Cammarano on August 9, 1994. (IRB Investigative Report, In re: Joseph Cammarano, Jr., Ex. 2.) In this declaration, Cammarano recounted his work experience as a member of Local 282. He testified that he had been both a Teamster and a member of Local 282 for ten years. *Id.* at 3. Cammarano stated that at the time of the declaration, he was a Teamster foreman and received a yearly salary of $80,000 for this position. *Id.* at 7–8. Throughout this testimony, Cammarano provided "only vague descriptions of his work," descriptions that "tended to suggest that [Cammarano's] actual role was consistent of that of the historical function of many Local 282 working Teamster foremen associates as working closely with organized crime." IRB Opinion and Decision at 2.

At the conclusion of the hearing, the IRB imposed a post-hearing schedule on the hearing participants. The IRB informed the participants that post-hearing submissions would be due fourteen days following the receipt of the hearing transcript. (Tr. 148.)

Based on the evidence produced at the hearing, the IRB held that it had been established by a preponderance of the evidence, *see* IRB Rules, ¶ J.6, that Cammarano, "a working teamster foreman for Local 282, which has long been dominated by organized crime, has associated frequently—at the Grand Avenue social club and elsewhere—with individuals who are members of, or who are closely associated with, the Bonnano LCN family." IRB Opinion and Decision at 8. The IRB found the hearsay evidence it heard at Cammarano's hearing to be credible. *Id.* at 3, 7. It also found that Cammarano had knowingly associated with members or associates of the Bonnano LCN family during his membership in Local 282, *id.* at 3–6, and that "the substantial weight of the evidence concerning the duration and quality of Cammarano, Jr.'s contacts with known organized crime figures [demonstrated] that such contacts were purposeful and not incidental, fleeting, casual or inadvertent." *Id.* at 6 (citations omitted). The IRB further found that Cammarano's testimony was "rife with contradiction," *id.* at 6, because his hearing testimony conflicted with his earlier deposition testimony as well as FBI reports regarding Cammarano's visits to the Grand Avenue social club and his relationship with various members of organized crime. *Id.* at 6–7. Accordingly, the IRB concluded that Cammarano "has brought reproach upon the IBT and violated Article II, Section 2(a) and Article XIX, Section 7(b)(1), (2) and (9) of the IBT Constitution." *Id.* at 8.

Having held that the charges against Cammarano had been proven, and having considered the gravity of the charges, the IRB permanently barred Cammarano from holding membership in, or any position with, the IBT or any IBT-affiliated entity in the future. *Id.* The IRB further ruled that Cammarano may not hereafter obtain employment, consulting, or other work with the IBT or any IBT-affiliated entity. *Id.*

This Court received IRB Application XXII consisting of the IRB's Opinion and Decision concerning Cammarano together with supporting exhibits on September 26, 1995. By letter dated that same day, Chambers informed Cammarano's attorney that if he wished to object to the IRB's findings and rulings, he could submit any objections to IRB Application XXII to this Court no later than fourteen days from the date of the letter. (Letter from James C. Maroulis, Law Clerk to the Honorable David N. Edelstein, United States District Judge, to Albert A. Gaudelli, Esq., Defense Counsel (Sept. 26, 1995) (on file with Clerk of the Southern District of New York).) On September 28, 1995, Gaudelli wrote to this Court requesting an extension of time to file objections to the IRB Opinion and Decision because he "ha[d] not had the opportunity to review this recommendation and application with [his] client." (Letter from Albert A. Gaudelli, Esq., Defense Counsel, to the Honorable David N. Edelstein, United States District Judge (Sept. 28, 1995) (on file with Clerk of the Southern District of New York).) On October 5, 1995, this Court denied Gaudelli's request because it "fail[ed] to set forth an adequate reason for extending Mr. Cammarano's time to file objections to Application XXII." 88 Civ. 4486, Application XXII of the Independent Review Board (Cammarano) (S.D.N.Y. Oct. 5, 1995) (Memorandum Endorsement).

On October 11, 1995, this Court received Cammarano's objections to Application XXII from Gaudelli. In the papers submitted to this Court, Cammarano detailed the specific portions of the IRB Opinion and Decision that he found objectionable. He asserted that the IRB's references to Cammarano's father and brother were "patently unfair" because "[e]very person is entitled to normal contact with his own family. . . ." (Cammarano's Objections to the IRB Opinion and Decision Application XXII, at 2 (Oct. 10, 1995).) He challenged the IRB's findings as "vague" and unsupported by the evidence. *Id.* at 4–5. In addition, Cammarano asserted that several of the IRB's findings were erroneous because they "[i]nferr[ed] criminal association . . . by hearsay and unfounded unsubstantiated opinion. . . ." *Id.* at 6. Specifically, Cammarano challenged the IRB's use of hearsay testimony, *id.* at 3, and objected to "the conclusion made by the IRB based on FBI reports and testimony which at best were double hearsay and most times triple and beyond." *Id.* at 3.

In response to Camarano's objections, both the IRB and the office of the United States Attorney for the Southern District of New York submitted letters in support of the IRB Opinion and Decision. Both letters focused on Cammarano's "principal objection to the IRB decision . . . that [the] IRB relied upon hearsay evidence." (Letter from Celia A. Zahner, Special Counsel to Chief Investigator Charles M. Carberry, to the Honorable David N. Edelstein, United States District Judge 1 (Oct. 24, 1995) (on file with Clerk of Southern District of New York) ("Zahner Letter")); *see* (Letter from Beth E. Goldman, Assistant United States Attorney, to the Honorable David N. Edelstein, United States District Judge (Nov. 3, 1995) (on file with Clerk of Southern District of New York) ("Goldman Letter")). Citing Second Circuit case law, both letters emphasized that it is well settled that reliable hearsay is admissible at internal union disciplinary hearings under the Consent Decree. (Goldman Letter (citing *United States v. IBT (Cimino)*, 964 F.2d 1308, 1312–13 (2d Cir.1992))); (Zahner Letter at 1 (citing *United States v. IBT (DiGirlamo)*, 19 F.3d 816, 823 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); *United States v. IBT (Adelstein)*, 998 F.2d 120, 124 (2d Cir.1993); *United States v. IBT (Senese)*, 941 F.2d 1292, 1297–98 (2d Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992))).

In addition, the IRB addressed the issue of whether expert testimony offered at the hearing could be based on information beyond the personal knowledge of the expert witness. Citing both the Federal Rule of Evidence and case law from this Court, the IRB asserted that an "expert opinion can be predicated upon information given to [the expert] prior to the hearing and otherwise inadmissible evidence if it is 'of a type reasonably relied upon by experts in the particular field in forming opinions.'" (Zahner Letter at 2 (citing Fed.R.Evid. 703; *Investigations Officer v. Senese*, IA Decision at 23 (July 12, 1990), *aff'd*, *United States v. IBT*, 745 F.Supp. 908 (S.D.N.Y.1990), *aff'd*, 941 F.2d 1292 (2d Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992)).) Finally, both letters asserted that the evidence presented at Cammarano's hearing fully supported the IRB Opinion and Decision and that the IRB Opinion and Decision should be affirmed in all respects. (Goldman Letter); (Zahner Letter at 2).

Having carefully reviewed all of the relevant documents in the instant application, this Court finds that the IRB's decision is not arbitrary or capricious. *See* IRB Rules, ¶ O ("In reviewing actions of the IRB, this Court shall apply the same standard of review applicable to review of final federal agency action under the Administrative Procedure Act."); *see also* May 6, 1994 Opinion & Order, *slip op.* at 4, 1994 WL 178135 (S.D.N.Y. 1994). This Court also has reviewed the arguments advanced by the IRB and the office of the United States Attorney in their respective responses to Cammarano's objections. This Court finds that the IRB and the office of the United States Attorney are correct in their assertions that hearsay testimony is admissible at internal union disciplinary proceedings, that expert opinion can be predicated upon information given to an expert prior to a hearing, that if expert opinion is based upon facts or data of the type reasonably relied upon by experts in the particular field in forming opinions the facts or data need not be admissible in evidence, and that the IRB's Opinion and Decision is fully supported by the evidence. Finally, this Court has reviewed Cammarano's objections and finds that these objections are meritless. Consequently, the decision of the IRB is affirmed in its entirety.

SO ORDERED.