**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.**

**In re APPLICATION XXVII OF the INDEPENDENT REVIEW BOARD.**

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Jan. 11, 1996.

Mary Jo White, United States Attorney for the Southern District of New York (Karen B. Konigsberg, Assistant United States Attorney, of counsel), New York City, for the United States.

Judith A. Scott, General Counsel, International Brotherhood of Teamsters, Washington, DC, for defendant.

### MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America against, *inter alia,* defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). Pursuant to the Rules and Procedures for Operation of the Independent Review Board for the International Brotherhood of Teamsters ("IRB Rules"), ¶ O, the Independent Review Board ("IRB") has made an application to this Court seeking approval of its decision in this matter.

 Application XXVII presents for this Court's review the decision of the IRB regarding disciplinary charges brought against Costabile Lauro ("Lauro"), a former member of IBT Local 807, located in Long Island City, New York. These charges are contained in an investigative report issued by

the IRB on June 9, 1995.[1] In this report, the IRB charged Lauro as follows:

> While an IBT member, you brought reproach upon the IBT and violated your membership oath in violation of Article II, Section 2(a) and Article XIX, Section 7(b)(1), (2) and (9) [of the IBT Constitution] to wit:

> While a member of IBT Local 807, you knowingly associated with members of organized crime including, but not limited to, Alphonse "Ally Shades" Malangone and Alan Longo.

Independent Review Board, Investigative Report In re: Costabile Lauro ("Investigative Report") at 17 (June 9, 1995). The IRB forwarded its report, which included the charge against Lauro, to the IBT on June 9, 1995.

By letter dated June 15, 1995, the IBT referred the charge regarding Lauro back to the IRB for adjudication. On August 1, 1995, the IRB held a hearing in New York City on the above-quoted charge ("the hearing"). Following the hearing, both Lauro and Chief Investigator Charles M. Carberry submitted memoranda.

The hearing focused on the issue of whether Lauro had associated with Alphonse Malangone ("Malangone") and Alan Longo ("Longo"). At the hearing, the IRB heard testimony from Special Agent Brian Taylor ("Taylor") of the Federal Bureau of Investigation ("FBI"). Opinion and Decision of the Independent Review Board, In re: Constabile [sic] Lauro at 2 (November 14, 1995) ("IRB Opinion and Decision"). Taylor testifies that Malangone was a Capo with the Genovese LCN Family "and that Malangone worked for Capo Tommy Cotaldo until Cotaldo's death in 1989 after which he took over the crew." IRB Opinion and Decision at 2 (citations omitted). Taylor also testified that Malangone managed Pastel's Disco during a

---

**1.** The IRB is vested with broad investigatory and disciplinary powers. The IRB's investigatory authority is coextensive with that of the General President and the General Secretary–Treasurer under the IBT Constitution and applicable law. *See* February 2, 1994, Memorandum & Order, 842 F.Supp. 1550, 1551–52 (S.D.N.Y.1994); *see also* August 19, 1991, Opinion & Order, 803 F.Supp. 761, 768 (S.D.N.Y.1992), *aff'd in relevant part,* 998 F.2d 1101 (2d Cir.1993). Under the Consent Decree, the IRB must use this authority, among other things, to investigate allegations of corruption within the IBT, allegations of influence by La Cosa Nostra or other organized crime groups upon IBT members or activities, and any failure of IBT members or leadership to cooperate fully with the IRB. 842 F.Supp. at 1551–52; *see* Consent Decree § G(a).

time when Lauro worked at the disco as a bouncer. *Id* (citations omitted). The IRB found Taylor's testimony to be credible. *Id.*

The IRB also received into evidence an April 1988 report by the United States Senate Permanent Subcommittee on Investigations, which identifies Malangone as a member of the Genovese LCN Family. Investigative Report, Ex. 9. In addition, the IRB reviewed the declaration of Gambino LCN Underboss Salvatore Gravano. Gravano's declaration states that the Jacob Javits Center—where Lauro worked as a member of Local 807—is one of the rackets controlled by Malangone. *See* Investigative Report, Ex. 7 at ¶¶ 27–28.

Taylor also testified that Longo is "considered by the Federal Bureau of Investigations to be a soldier or a made member of the Genovese family and a close associate of Mr. Malangone." (Transcript of Hearing In re: Costabile Lauro ("Tr.") at 19 (August 1, 1995).) The IRB also reviewed Taylor's sworn declaration, which asserts that "the FBI considers *Alan Longo* ... to be a soldier in the Genovese LCN Family." Investigative Report, Ex. 7, ¶ 37. Moreover, Taylor's declaration asserts that Longo serves as Malangone's driver. *Id.*

Lauro testified at the IRB hearing, and the IRB also examined transcripts of testimony that Lauro gave at IRB hearings on July 20, 1994, and April 27, 1994. During these hearings, Lauro testified regarding his contacts with Malangone. Lauro testified that: (1) Lauro worked as a bouncer at Pastel's Disco; (2) Malangone and Lauro had been close friends for forty years; (3) Malangone was the godfather of Lauro's son; (4) Lauro attended the baptisms of Malangone's grandchildren; (5) Lauro and Malangone had gotten hair cuts together for twenty years; and (6) Lauro and Malangone were once arrested together for illegal gambling. IRB Opinion and Decision at 3 (citations omitted). Lauro also testified that he had continued to associate with Malangone during the time that Lauro worked for IBT Local 807. *Id.* at 3 (citations omitted).

Although Lauro did not testify about his relationship with Longo during the hearing concerning the instant application, Lauro did testify regarding his relationship with Longo at the IRB hearings held on July 20, 1994, and April 27, 1994. Lauro admitted meeting with Longo on several occasions "since working at the Javits Center, including drinks at Pastel's [Disco] and a coffee shop at Fifth Avenue and Seventeenth Street in Brooklyn." Opinion and Decision at 5 (citations omitted). Lauro also testified that seven or eight years prior to his April 27, 1994, testimony, he had heard that Longo had ties with organized crime. *Id.* (citations omitted).

At the conclusion of the hearing, the IRB imposed a post-hearing schedule on the hearing participants, requiring the Chief Investigator to submit a post-hearing memorandum by September 8, 1995, requiring Lauro to submit a response within fifteen days of the date of the submission of the Chief Investigator's memorandum, and requiring the Chief Investigator to submit a reply within five days from the date of Lauro's response. (Tr. 27.)

Based on the evidence produced at the hearing, the IRB found that the Chief Investigator had demonstrated "the requisite proof of prohibited association" between Lauro and "both Malangone and Longo." Opinion and Decision at 6; *see also* IRB Rules, ¶ J.6 ("In order to be sustained, the proposed findings, charges, or recommendations regarding discipline or trusteeship, contained in the Investigative Report, must be supported by a preponderance of reliable evidence."). The IRB held that the evidence supported "the conclusion that Lauro's associations with Malangone and Longo were purposeful, not fleeting, and that Lauro was in fact aware of the LCN connections of Malangone and Longo." Opinion and Decision at 6–7. Accordingly, the IRB concluded that Lauro "has brought reproach upon the IBT and violated Article II, Section 2(a) and Article XIX, Section 7(b)(1), (2) and (9) of the IBT Constitution." *Id.* at 7.

Having held that the charges against Lauro had been proved, and having considered the gravity of the charges, the IRB permanently barred Lauro from holding membership in, or any position with, the IBT or any IBT-affiliated entity. *Id.* The IRB further

ruled that Lauro may not hereafter obtain employment, consulting, or other work with the IBT or any IBT-affiliated entity. *Id.*

This Court received IRB Application XXVII consisting of the IRB's Opinion and Decision concerning Lauro together with supporting exhibits on November 27, 1995. By letter dated that same day, Chambers informed Lauro that if he wished to object to the IRB's findings and rulings, he could submit any objections to IRB Application XXVII to this Court no later than ten days from the date of the letter. (Letter from James C. Maroulis, Law Clerk to the Honorable David N. Edelstein, United States District Judge, to Costabile Lauro (Nov. 27, 1995) (on file with Clerk of the Southern District of New York).)

On December 22, 1995, this Court received a letter from Lauro, dated December 8, 1995, in which Lauro objects to the IRB's Opinion and Decision. Although Lauro admits that he associated with Malangone and Longo, he argues that these meetings were both incidental and innocent: "My chance meetings and at times, social meetings, such as weddings, are products of past boyhood obligations fulfilled by my presence and social intercourse, not to be seen as clandestine or subversive." (Letter from Costabile Lauro to the Honorable David N. Edelstein, United States District Judge (December 8, 1995) (on file with the Clerk of the Southern District of New York).) Lauro further argues that "[b]y no means has my contact with anyone deemed unsuitable been influential in my performance or dedication to my work as a Teamster in Local 807." *Id.*

Having carefully reviewed all of the relevant documents in the instant application, this Court finds that the IRB's decision is not arbitrary or capricious. *See* IRB Rules, ¶ O ("In reviewing actions of the IRB, this Court shall apply the same standard of review applicable to review of final federal agency action under the Administrative Procedure Act."); *see also* May 6, 1994 Opinion & Order, *slip op.* at 4 (S.D.N.Y.1994). This Court has reviewed both Application XXVII and Lauro's objections to this Application. This Court finds that Lauro's objections are unavailing for two reasons. First, Lauro's objec-

tions were not timely because the November 27, 1995, letter from Chambers to Lauro clearly establishes that any objections must be "received by this Court no later than ten (10) days from the date of this letter." (Letter from James C. Maroulis, Law Clerk to the Honorable David N. Edelstein, United States District Judge, to Costabile Lauro (Nov. 27, 1995) (on file with Clerk of the Southern District of New York).) Although Lauro dated his letter December 8, 1995, this Court did not receive this letter until December 22, 1995—after Lauro's deadline for filing objections had passed. Second, Lauro's objections are meritless because his admitted associations with Malangone and Longo are sufficient to warrant IRB sanctions.

Turning, once again, to IRB Application XXVII, this Court notes with great concern that several errors have been committed. First, in the title of the IRB's Opinion and Decision, Lauro's first name is misspelled as "Constabile." Second, on one occasion, the IRB's Opinion and Decision misspells Malangone's name as "Malagone." IRB Opinion and Decision at 2. Third, the IRB submitted a copy of Exhibit 13 of the IRB Investigative Report—which is a transcript of Lauro's testimony before the IRB on April 27, 1994—with several missing pages. Because the IRB's Opinion and Decision cites to several of these missing pages, this Court obtained a copy of the missing pages from the Chief Investigator's Office prior to issuing this Memorandum and Order. These missing pages are now on file with the Clerk of the Southern District of New York. Fourth, and more troubling, the IRB's Opinion and Decision misstates Lauro's testimony regarding the number of meetings he had with Longo. The Opinion and Decision states: "Lauro testified that he has associated with Alan Longo since becoming an IBT member on approximately ten occasions," Opinion and Decision at 4, and the Opinion and Decision supports this assertion with citations to Lauro's testimony at the July 20, 1994, and April 27, 1994, IRB hearings. A review of Lauro's testimony at these hearings, however, reveals that Lauro testified to meeting with Longo on four or five occasions, not "approximately

10." Investigative Report, Ex. 1 at 47–49; Investigative Report, Ex. 13 at 19.

I am deeply troubled by the errors in Application XXVII. My displeasure is beyond words. It is hard to understand how these errors could have escaped notice. It occurs to me that due diligence and vigilance were lacking.

Despite the mistakes in Application XXVII, this Court finds that there is more than enough evidence in the record to support the IRB's conclusion that "Lauro's associations with Malangone and Longo were purposeful, not fleeting, and that Lauro was in fact aware of the LCN connections of Malangone and Longo." Opinion and Decision at 6–7. Accordingly, the decision of the IRB is affirmed in its entirety.

SO ORDERED.