**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendant.**

**In re APPLICATION XXXIII OF THE INDEPENDENT REVIEW BOARD.**

**No. 88 Civ. 4486 (DNE).**

United States District Court,
S.D. New York.

Dec. 9, 1996.

### MEMORANDUM & ORDER

EDELSTEIN, District Judge.

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America against, *inter alia,* defendants International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). Pursuant to the Rules and Procedures for Operation of the Independent Review Board for the International Brotherhood of Teamsters ("IRB Rules"), ¶ O, the Independent Review Board ("IRB") has made an application to this Court seeking approval of its decision in this matter.

Application XXXIII presents for this Court's review the decision of the IRB regarding disciplinary charges brought against Dominic Froncillo ("Froncillo"), a former member of IBT Local 807 ("Local 807" or "the Local") located in Long Island City, New York. These charges are contained in

an investigative report issued by the IRB on February 14, 1996.[1] In this report, the IRB charged Froncillo as follows:

> While an IBT member you brought reproach upon the IBT and violated your membership oath in violation of Article II, Section 2(a) and Article XIX, Section 7(b)(1), (2) and (9) [of the IBT Constitution] to wit:

> While a member of IBT Local 807, you knowingly associated with members of organized crime including, but not limited to, Alphonse Malangone.

(Proposed Charges Against Former Local 807 Member Dominic Froncillo ("Proposed Charges") (Feb. 14, 1996), at 19.) The IRB forwarded these charges and its report to the IBT on February 14, 1996. (Letter from John J. Cronin, Jr., Independent Review Board Administrator, to International Brotherhood of Teamsters General President Ron Carey (Feb. 14, 1996).)

By letter dated February 15, 1996, the IBT referred the charges against Froncillo back to the IRB. On February 16, 1996, the IRB served upon Froncillo a "Notice of Hearing" (the "Notice"), informing him that a hearing in this matter was scheduled for March 28, 1996, in the IRB's offices in Washington, D.C. (Letter from John J. Cronin, Jr., Independent Review Board Administrator, to Dominic Froncillo (Feb. 16, 1996).) The Notice also informed Froncillo that, at his hearing, he could "present any evidence relevant to defense of the charges against [him]." *Id.* In addition, the Notice notified Froncillo of his "right to be represented at the hearing by counsel or by an IBT member." *Id.*

On February 20, 1996, Froncillo acknowledged his receipt of the Notice, and requested that the hearing be held in New York instead of Washington, D.C. (Letter from Dominic Froncillo to John J. Cronin, Jr.,

Independent Review Board Administrator (Feb. 20, 1996).) On February 23, 1996, the IRB informed Froncillo that his request had been approved, and that his hearing now was scheduled for April 23, 1996, in Manhattan. (Letter from John J. Cronin, Jr., Independent Review Board Administrator, to Dominic Froncillo (Feb. 23, 1996).) On March 26, 1996, the IRB telephoned Froncillo's residence to confirm Froncillo's receipt of the IRB's February 23, 1996, letter. (Letter from John J. Cronin, Jr., Independent Review Board Administrator, to Dominic Froncillo (Mar. 26, 1996).) The IRB's March 23, 1996, letter states that "[t]he woman who answered the [phone] call stated that you received [the] February 23, 1996 letter ... and, as far as she knew, you plan to be at the April 23, 1996[,] hearing in New York." *Id.*

On April 23, 1996, the IRB held a hearing on the charges against Froncillo in Manhattan (the "hearing"). Froncillo appeared at the hearing without counsel. At the hearing, the Chief Investigator presented the IRB with exhibits, including a declaration by FBI Special Agent Brian F. Taylor ("Taylor"), and heard brief testimony from Taylor. (Opinion and Decision of The Independent Review Board, In re: Dominic Froncillo ("IRB Opinion & Decision") at 1 (July 2, 1996).) Taylor has been "an expert witness" in numerous organized crime trials and "has worked for the FBI for over nineteen years, eighteen of those conducting organized crime investigations." *Id.* at 2 n. 2. Because Froncillo elected not to testify, "the evidence tendered by the Chief Investigator was uncontradicted and unchallenged by Froncillo." *Id.* at 1–2.

One of the exhibits presented to the IRB was a deposition given by Froncillo on April 29, 1994. *Id.* at 1; (Proposed Charges at Exh. 7, at 4.) This deposition was taken by Charles M. Carberry, Esq., the Chief Inves-

1. The IRB is vested with broad investigatory and disciplinary powers. The IRB's investigatory authority is coextensive with that of the General President and the General Secretary–Treasurer under the IBT Constitution and applicable law. *See* February 2, 1994, Memorandum & Order, 842 F.Supp. 1550, 1551–52 (S.D.N.Y.1994); *see also* August 19, 1991, Opinion & Order, 803 F.Supp. 761, 768 (S.D.N.Y.1992), *aff'd in relevant part*, 998 F.2d 1101 (2d Cir.1993). Under the Consent Decree, the IRB must use this authority, among other things, to investigate allegations of corruption within the IBT, allegations of influence by La Cosa Nostra or other organized crime groups upon IBT members or activities, and any failure of IBT members or leadership to cooperate fully with the IRB. 842 F.Supp. at 1551–52; *see* Consent Decree § G(a).

tigator of the IRB. (Proposed Charges at Exh. 7, at 1.) At his deposition, Froncillo testified that he began "shaping" at the Jacob Javits Center (the "Javits Center") on July 3, 1990. (IRB Opinion & Decision at 2.) He subsequently became a member of Local 807 on February 19, 1991. *Id.* From that date forward, Froncillo worked as a Local 807 member in the Local's trade show division, working at the Javits Center and at conventions at various hotels. *Id.* On January 19, 1996, Local 807 suspended Froncillo for failing to pay union dues for a six-month period commencing in August 1995. *Id.* Prior to working at the Javits Center, Froncillo was unemployed for between one and two years following a five to ten-year employment with Mannix Industries in Long Island, in a non-union job installing aluminum windows. *Id.*

Froncillo also testified at his deposition that he knew Alphonse ("Ally Shades") Malangone ("Malangone") for ten to fifteen years. *Id.* at 5. The Chief Investigator presented the IRB with substantial evidence that Malangone was a member of the Genovese La Cosa Nostra ("LCN") Family. For example, according to Taylor's declaration, Malangone is a "Capo" in the Genovese LCN Family. *Id.* at 2; (Proposed Charges at Exh. 3, at 8.) In addition, Malangone's ties to organized crime are well-publicized. (IRB Opinion & Decision at 7.) In April 1988, the United States Senate's Permanent Subcommittee on Investigations issued a report publicly identifying Malangone as a member of the Genovese LCN Family. *Id. The New York Daily News* and *The New York Times* also have reported Malangone's ties to organized crime. *Id.* Moreover, Malangone's ties to organized crime have been corroborated by self-admitted members of the Gambino LCN Family, such as Salvatore ("Sammy the Bull") Gravano ("Gravano") and Vincent Cafar, as well as by Alphonse D'Arco, the former "acting Boss" of the Luchese LCN Family. *Id.* at 2. Gravano described Malangone as a Genovese "Family Captain ... [who] is into Shylocking, gambling, the Fulton Fish market, a Brooklyn disco, and the Javits Center." *Id.* at 3. Law enforcement officials also have observed Malangone with other LCN members, including

Gambino LCN Family Boss John Gotti ("Gotti") and Gravano. *Id.* at 2–4.

In addition, the Chief Investigator presented the IRB with evidence that Malangone associated with organized crime figures on many occasions over a substantial period of time. For example, Malangone attended a number of "organized crime celebrations." *Id.* at 4. First, on December 20, 1988, Malangone attended Gotti's Christmas party at the El Caribe Country Club in Brooklyn, New York. *Id.* Second, On April 16, 1989, detectives of the Kings County District Attorney's Office surveilled Pastels Disco, a Brooklyn disco which Malangone managed. *Id.* On that night, the FBI believes that a reception was held to celebrate the induction of Malangone's son Frank into the Genovese LCN Family. *Id.* Third, on October 27, 1989, the Organized Crime Task Force observed Malangone arriving with Genovese LCN Family member Alan Longo ("Longo") at the Ravenite Social Club in New York City for Gotti's birthday. *Id.* Fourth, on November 18, 1989, New York City Police Department detectives observed Malangone at the Scarpaci Funeral Home in Brooklyn for the wake of "Crazy" Tommy Contaldo, a former member of the Genovese LCN Family. *Id.* at 2, 5. Fifth, on February 28, 1990, detectives from the Waterfront Commission of New York harbor surveilled the 461 Court Street Club in Brooklyn, the Gambino LCN Family social club. *Id.* at 5. The detectives witnessed Malangone meeting at the club with a large number of LCN figures, including Gotti, and other individuals who the FBI considers Gambino LCN Family members: Anthony Ciccone, Jerry Brancato, Anthony Pimpinella and Anthony Anastasio. *Id.* Sixth, on September 19, 1992, law enforcement officials observed Malangone at the wedding reception of Daniel Marino, Jr., the son of Gambino LCN Family Capo Daniel Marino, Sr., at the Garden City Hotel. *Id.* at 4–5.

In addition, the evidence presented to the IRB demonstrates that Froncillo had contact with Malangone over several years. For example, Malangone invited, and Froncillo attended, Malangone's son's wedding during July 1990, at the El Caribe Club. (IRB

Opinion & Decision at 5.) Malangone also attended Froncillo's father's wake in July 1992. *Id.* Moreover, Froncillo admits that after he became an IBT member, he saw Malangone between ten and twenty times at Pastel's Disco ("Pastel's"), which Malangone managed. *Id.;* (Proposed Charges at 11.) Several of these visits occurred in private, during non-business hours, when Pastel's was closed to the public. (IRB Opinion & Decision at 6.) In addition, on April 16, 1989, law enforcement officials surveilling Pastel's during the reception following Frank Malangone's induction into the Genovese LCN Family observed a white 1981 Cadillac in Pastel's parking lot that was registered to Froncillo's wife. *Id.*

Froncillo was also observed in the company of Malangone and his associates on December 17, 1990. *Id.* On this date, the New York City Police Department's Organized Crime Intelligence Division ("OCI") conducted a surveillance of Malangone. *Id.* During this surveillance, OCI observed Froncillo speaking to Malangone, Elio "Chinatown" Albanese, Longo, and John Giangrande, all of whom the FBI considers to be Genovese LCN Family members, at the corner of Mulberry and Grand Streets in Manhattan. *Id.* The OCI observed all four men enter Ruggero's Restaurant ("Ruggero's") on Grand Street, and remain there for over one hour. *Id.* After leaving Ruggero's, the OCI witnessed Froncillo, Malangone, and Giangrande walk to 171 Mulberry Street, which the FBI believes to be a "known Genovese LCN Family social club." *Id.* at 6–7.

Finally, Froncillo testified that he has had several contacts with Malangone at Dino's Hair Salon ("Dino's") in Brooklyn since becoming an IBT member. *Id.* at 8. According to the FBI, members of the Luchese, Gambino, and Genovese LCN Families have frequented Dino's for the past fifteen years. *Id.* In his deposition, Froncillo stated that he went to Dino's "once every two months." *Id.* Froncillo admitted seeing and greeting Malangone at Dino's two or three times in the twelve months prior to his deposition. *Id.*

Based on the evidence presented at the hearing, the IRB found that "the evidence established that Dominic Froncillo brought reproach upon the IBT and violated the IBT Constitution by knowingly associating with members of organized crime." *Id.* at 19. First, the IRB "determine[d] that Malangone's membership in the Genovese LCN Family was clearly established." *Id.* at 10. The IRB found the hearsay evidence presented to it at the hearing to be reliable. *Id.* It further noted that, in an earlier decision, the IRB found Malangone to be a Genovese LCN Family member. *Id.* at 10 n. 7. The IRB stated that "[i]n *Investigations Officer v. Lauro,* the [IRB], in permanently barring Lauro from the IBT based upon his 'knowing association' with Malangone and Longo, concluded that Malangone was a Genovese LCN Family member." *Id.* (citing Decision of the Independent Review Board, slip op. at 2–3, 7 (Nov. 14, 1995), *aff'd, United States v. IBT,* 910 F.Supp. 139 (S.D.N.Y 1996)).

Next, the IRB found that, in light of the evidence presented to it, "Froncillo's knowledge of Malangone's ties to organized crime was established." *Id.* at 12. The IRB noted that Malangone's LCN membership was reported by the United States Senate and by local newspapers. *Id.* Moreover, the IRB found that "given their longstanding friendship, Froncillo's knowledge of Malangone's ties to organized crime may be inferred from the length and nature of his relationship with Malangone, which included Froncillo and Malangone meeting in the company of other LCN members." *Id.* (citation omitted).

Having held that the charges against Froncillo had been proved, and having considered the gravity of the charges, the IRB permanently barred Froncillo from holding membership in or any position with the IBT, or any IBT-affiliated entity, in the future. *Id.* at 19. The IRB further ruled that Froncillo may not hereafter obtain employment, consulting or other work with the IBT or any IBT-affiliated entity. *Id.*

This Court received IRB Application XXXIII, consisting of the IRB's Opinion and Decision concerning Froncillo together with supporting exhibits, on July 3, 1996. By letter dated July 12, 1996, Chambers notified Froncillo that if he wished to object to the IRB's findings and rulings, he could submit

any objections to IRB Application XXXIII to this Court no later than ten days from the date of the letter. (Letter from Jennifer A. Meyer, Law Clerk to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York, to Dominic Froncillo (July 12, 1996) (on file with Clerk of the Southern District of New York).) This Court received no response from Froncillo.

Having carefully reviewed the IRB's Opinion and Decision, as well as the exhibits attached thereto, this Court finds that the IRB's decision is not arbitrary and capricious. *See* IRB Rules, ¶ O ("[i]n reviewing actions of the IRB, this Court shall apply the same standard of review applicable to review of final federal agency action under the Administrative Procedure Act"); *see also* May 6, 1994 Opinion & Order, slip op. at 4 (S.D.N.Y 1994). This Court finds that the IRB received adequate proof that Malangone was a member of organized crime. In addition, this Court finds that the IRB sufficiently established that Froncillo knew that Malangone was an organized crime member. This Court further finds that the Chief Investigator presented the IRB with proof that Froncillo knowingly associated with Malangone. Accordingly, the decision of the IRB is affirmed in its entirety.

SO ORDERED.